THE STATE OF OHIO, APPELLEE, *v.* FOSTER, APPELLANT.

THE STATE OF OHIO, APPELLANT, *v.* QUINONES, APPELLEE.

THE STATE OF OHIO, APPELLEE, *v.* ADAMS, APPELLANT.

THE STATE OF OHIO, APPELLEE, *v.* HORN, APPELLANT.

[Cite as *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856.]

(Nos. 2004–1568 and 2004–1771—Submitted July 26, 2005;  No. 2005–0735—
Submitted August 10, 2005;  and No. 2005–2156—Submitted February
10, 2006—Decided February 27, 2006.)

2

LANZINGER, J.

{¶ 1} The question presented in these four [1] cases, consolidated sua sponte, is whether Ohio's felony-sentencing structure violates the Sixth Amendment to the United States Constitution in the manner set forth in *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. Because we determine that portions of the applicable statutes are unconstitutional, we apply a severance remedy similar to that adopted in *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621. This opinion will (1) summarize the Sixth Amendment principles of *Apprendi* and *Blakely*, (2) present the histories of the *Foster, Quinones, Adams,* and *Horn* appeals, (3) provide an overview of Ohio sentencing statutes, (4) measure the statutes against the requirements of the Sixth Amendment, and (5) apply a remedy for the constitutional violation.

## I. Sixth Amendment Principles

{¶ 2} The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to trial by jury. *Duncan v. Louisiana* (1968), 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Likewise, Section 5, Article I of the Ohio Constitution states that the "right of trial by jury shall be inviolate," and Section 10, Article I confirms the right to "speedy public trial by an impartial jury." These sections preserve for the accused "all essential and distinguishing features of the trial by jury" known to the common law in Ohio. *Work v. State* (1853), 2 Ohio St. 296, syllabus.

{¶ 3} It was not anticipated that jury rights may be implicated in sentencing until *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. In *Apprendi*, the Supreme Court of the United States examined New Jersey's "hate crime" statute, which allowed an enhanced sentence if the judge found by a preponderance of the evidence that racial bias was a motive for the offense. After the judge made this finding in his case, Apprendi was sentenced to 12 years in prison, two years above the maximum for the second-degree crime of which he had been convicted. The Supreme Court ruled that Apprendi's sentence, by exceeding the statutory maximum based only on judicial fact-finding, violated his Sixth Amendment rights because the jury, rather than judge, must find all facts essential to punishment. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

---

1. Case Nos. 2005–0735 and 2005–2156, *State v. Adams* and *State v. Horn,* were consolidated sua sponte in order to provide a comprehensive examination of Ohio's sentencing scheme.

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435.

{¶ 4} Two years later, the *Apprendi* rule was applied to an Arizona capital statute that permitted the death penalty solely on a judicial finding of statutory aggravating circumstances. *Ring v. Arizona* (2002), 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556. Because the aggravating factor found by the judge operated as " 'the functional equivalent of an element of a greater offense,' " it required submission to a jury and proof beyond a reasonable doubt. Id. at 609, 122 S.Ct. 2428, 153 L.Ed.2d 556, quoting *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348, 147 L.Ed.2d 435, fn. 19.

{¶ 5} Until now, we have not had occasion to rule on the effect of *Apprendi, Ring,* or *Blakely* on our noncapital-sentencing law. *State ex rel. Jaffal v. Calabrese,* 105 Ohio St.3d 440, 2005-Ohio-2591, 828 N.E.2d 107, ¶ 7 (adequate remedy in extraordinary-writ case prevented consideration of constitutional claim); *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, at ¶ 69–70 (*Ring* not applicable to Ohio's capital-sentencing scheme). In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, the *Apprendi* rule was broadened. We now examine our statutes in light of *Blakely.*

{¶ 6} Blakely pleaded guilty in a Washington state court to second-degree kidnapping involving domestic violence and use of a firearm, a class-B felony carrying a ten-year maximum prison penalty. Other sentencing provisions specified a "standard range" of 49 to 53 months for second-degree kidnapping with a firearm. The sentencing judge imposed a prison term of 90 months, after making a finding of "deliberate cruelty," one of the statutorily enumerated grounds that justified an exceptional sentence. Thus, the sentence fell below the ten-year statutory maximum, but well above the 53–month maximum of the "standard range."

{¶ 7} The United States Supreme Court held that Blakely's sentence violated his Sixth Amendment right to trial by jury because a jury did not find the facts that permitted an "exceptional" sentence. Id., 542 U.S. at 304, 124 S.Ct. 2531, 159 L.Ed.2d 403. Although the state argued that the court had not violated *Apprendi* because the statutory maximum was ten years, the court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." (Emphasis sic and citations omitted.) Id. at 303–304, 124 S.Ct. 2531, 159 L.Ed.2d 403. Thus,

aside from the exception for prior criminal convictions [2] and the defendant's consent to judicial fact-finding, the Sixth Amendment prohibits a judge from imposing a sentence greater than that allowed by the jury verdict or by the defendant's admissions at a plea hearing.

{¶ 8} Commentators expected that as a consequence of *Blakely*, juries would be required to take a more active sentencing role in determinate-guideline states.[3] But the Supreme Court created a different remedy for a *Blakely* violation by converting the Federal Sentencing Guidelines to an advisory, rather than mandatory plan. *United States v. Booker*, 543 U.S. at 227, 125 S.Ct. 738, 160 L.Ed.2d 621.

{¶ 9} Having heard evidence that Booker had been found with 92.5 grams of crack cocaine, a federal jury found him guilty of possession with intent to distribute "at least 50 grams" of crack cocaine. The federal range for the offense was ten years to life. Booker's criminal history and the quantity of drugs found by the jury gave him a guideline "base" prison sentence of 210 to 262 months. Nevertheless, after a hearing, the trial judge concluded that Booker had possessed an additional 566 grams of crack cocaine and was guilty of obstructing justice and consequently imposed a sentence of 30 years.

{¶ 10} The Supreme Court held that the guidelines violated the Sixth Amendment because they required the judge rather than jury to make findings of fact necessary for punishment. Id., 543 U.S. at 233–234, 125 S.Ct. 738, 160 L.Ed.2d 621. As a remedy for the *Blakely* violations, the court held that the Federal Sentencing Guidelines must be treated as advisory only, with the maximum sentence being the top of the range set by the statute under which the defendant was convicted. See id. at 259, 125 S.Ct. 738, 160 L.Ed.2d 621. Thus, the Supreme Court excised from the Sentencing Reform Act of 1984 those provisions that made the guidelines mandatory, rendering the guidelines "effectively advisory." Id. at 245, 125 S.Ct. 738, 160 L.Ed.2d 621. District courts, although no longer bound to apply them, must consider the guidelines and take them into account in sentencing. Id. at 264, 125 S.Ct. 738, 160 L.Ed.2d 621.

---

2. See *Almendarez–Torres v. United States* (1998), 523 U.S. 224, 243, 118 S.Ct. 1219, 140 L.Ed.2d 350. But, see, *Shepard v. United States* (2005), 544 U.S. 13, 24–25, 125 S.Ct. 1254, 161 L.Ed.2d 205, concerning the meaning of "prior conviction" and whether a fact *about* a prior conviction falls within an *Apprendi* exception.

3. See Vera Institute of Justice, Aggravated Sentencing: *Blakely v. Washington*—Practical Implications for State Sentencing Systems (Aug.2004); Aggravated Sentencing: *Blakely v. Washington*— Legal Considerations for State Sentencing Systems (Sept.2004); and Beyond *Blakely* : Implications of the *Booker* Decision for State Sentencing Systems (Feb.2005). See, also, Douglas A. Berman's legal blog, Sentencing Law and Policy, at *http://sentencing.typepad.com*, for updates on *Blakely* and current source material on sentencing.

{¶ 11} The court also replaced the de novo standard of appellate review required by Section 3742(e), Title 18, U.S.Code with a "reasonableness" standard under the now advisory guidelines, noting that reasonableness is a standard already familiar to appellate courts and provides the best chance for sentencing uniformity. Id. at 261, 125 S.Ct. 738, 160 L.Ed.2d 621. Finally, the holding in *Booker* was applied "to all cases on direct review." Id. at 268, 125 S.Ct. 738, 160 L.Ed.2d 621, citing *Griffith v. Kentucky* (1987), 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649.

{¶ 12} *Blakely* already has caused several states to review their sentencing systems.[4] Ohio's plan has been called into question by the four cases now before us.

## II. Histories of Cases on Review

{¶ 13} Appellant Andrew Foster and appellee Jason Quinones waived their rights to jury trial, entering pleas. Appellants Robert Adams and Jeannett Horn were convicted by a jury. We have accepted each case on a discretionary appeal.

### Andrew Foster

{¶ 14} Andrew Foster was indicted by the Licking County Grand Jury on April 10, 2003. He was charged with 14 counts of breaking and entering[5] and one count of possession of cocaine,[6] all felonies of the fifth degree; four counts of safecracking,[7] three counts of grand theft,[8] one count of grand theft of a motor vehicle,[9] and two counts of forgery,[10] all felonies of the fourth degree; and one count of engaging in a pattern of corrupt activity,[11] a felony of the second degree.

---

4. See, e.g., *State v. Brown* (2004), 209 Ariz. 200, 99 P.3d 15; *Lopez v. People* (Colo.2005), 113 P.3d 713; *Smylie v. State* (Ind.2005), 823 N.E.2d 679; *State v. Natale* (2005), 184 N.J. 458, 878 A.2d 724; *State v. Shattuck* (Minn.2004), 689 N.W.2d 785; *State v. Dilts* (2004), 337 Or. 645, 103 P.3d 95; *People v. Black* (2005), 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534; *State v. Gomez* (Tenn.2005), 163 S.W.3d 632; *State v. Allen* (2005), 359 N.C. 425, 615 S.E.2d 256; and *State v. Provost*, 2005 VT 134, 896 A.2d 55.

5. R.C. 2911.13.

6. R.C. 2925.11(C)(4)(a).

7. R.C. 2911.31(A).

8. R.C. 2913.02(A)(1).

9. R.C. 2913.02(A)(1).

10. R.C. 2913.31(A)(3).

11. R.C. 2923.32(A)(1).

{¶ 15} Foster eventually entered no-contest pleas on September 25, 2003, to all 26 charges. According to a statement made by the prosecutor at the sentencing hearing, Foster broke into business establishments in Fairfield, Licking, and Franklin counties between July 28, 2002, and January 26, 2003. At some locations, he tampered with safes. He stole money from two businesses and forged stolen checks. During the break-ins, Foster took lottery tickets, a company van, and other items of property from 14 victims altogether. When he was arrested for the forgeries, he had drug-related materials containing cocaine residue in his possession.

{¶ 16} Foster was found guilty after his no-contest pleas were accepted. He was sentenced to minimum prison terms of six months on counts one through 25 and two years on count 26. Count 26 and 14 others are to be served consecutively, while 11 of the counts imposed are to be served concurrently, for a total prison term of nine years. The sentence was upheld by the Licking County Court of Appeals. *State v. Foster*, 5th Dist. No. 03CA95, 2004-Ohio-4209, 2004 WL 1789514.

{¶ 17} Foster appeals his sentence, arguing, "A trial court may not sentence a defendant to more than minimum, concurrent sentences unless the State proves the statutory criteria for increasing the sentence to a jury beyond a reasonable doubt." We accepted this proposition to determine *Blakely*'s application to the statutes involved.

## Jason Quinones

{¶ 18} Jason Quinones was indicted on March 20, 2003, and June 25, 2003, on charges arising from his sexual intercourse with three girls, aged 14, 15, and 12. He was over 18 at the time of the offenses. Quinones was charged with forcible rape of a child under the age of 13, a first-degree felony,[12] with a sexually-violent-predator specification;[13] two counts of kidnapping, also felonies of the first degree,[14] with sexually-violent-predator and sexual-motivation specifications;[15] five counts of unlawful sexual conduct with a minor, fourth-degree felonies;[16] one count of intimidation, a third-degree felony;[17] and obstruction of official business,

---

12. R.C. 2907.02(A)(1)(b).

13. R.C. 2941.148.

14. R.C. 2905.01.

15. R.C. 2941.147 and 2929.148.

16. R.C. 2907.04.

17. R.C. 2921.04.

a fifth-degree felony.[18]   As a result of a plea agreement, Quinones entered guilty pleas to four felonies: two counts of unlawful sexual conduct with a minor in CR 435216; a first-degree felony of rape of a child under the age of 13 with force, but with the sexually-violent-predator specifications deleted in CR 437597; and a single count of unlawful sexual conduct with a minor in CR 438531. A nolle prosequi was entered on the remaining counts.

{¶ 19} Quinones was sentenced October 3, 2003. The judge orally imposed a maximum ten-year prison term for the rape in CR 437597, an eight-month prison term in CR 438531, and two 18–month concurrent prison terms in CR 435216. Certain of the terms were to be served consecutively. After a hearing, Quinones was also adjudicated a sexual predator. A discrepancy between the judgment entries was resolved in Quinones's favor on appeal, for a total prison term of 11 ½ years.[19]   Quinones's sentence included three terms greater than the minimum,[20] maximum terms[21] for rape and the unlawful sexual conduct with a minor, and consecutive sentences [22] with respect to the rape conviction and two of the concurrent fourth-degree felonies. Quinones appealed the maximum and consecutive nature of his sentences as well as the sexual-predator finding to the Cuyahoga County Court of Appeals.[23]

{¶ 20} The appellate court concluded that although the trial court had made the appropriate findings and adequately given its reasons for imposing the maximum sentence as required by R.C. 2929.14(C) and 2929.19(B)(2)(d), Quinones's sentence violated *Blakely* because a jury did not find that he had committed the worst form of the offense or posed the greatest likelihood of recidivism, nor did he admit to either. *State v. Quinones*, Cuyahoga App. No. 83720, 2004-Ohio-4485, 2004 WL 1903250, at ¶ 30. The maximum sentences were vacated, and Quinones's cases were remanded for resentencing in light of *Blakely*. The assignment of error related to consecutive sentences was deemed to be moot. Id. at ¶ 31.

---

18.  R.C. 2921.31.

19.  The appellate court noted that the judgment entries in CR 435216 and CR 437597 reflect consecutive sentences, but the judgment entry in CR 438531 states that the eight-month prison term is concurrent with the prison terms in the other two cases. The appellate court resolved the perceived conflict by determining that the eight-month prison term in CR 438531 is to be served concurrently with the others.

20.  R.C. 2929.14(B).

21.  R.C. 2929.14(C).

22.  R.C. 2929.14(E)(4).

23.  The sexual-predator determination was upheld on appeal and is not an issue before us.

{¶ 21} Pursuant to the appeal by the state of Ohio, we accepted the first proposition of law to determine whether *Blakely* applies to the imposition of maximum or consecutive sentences in Ohio. *State v. Quinones*, 105 Ohio St.3d 1401, 2005-Ohio-286, 821 N.E.2d 1023.

## Robert Adams

{¶ 22} Robert Adams was indicted on April 18, 2003, on charges arising from an automobile accident resulting in the deaths of two individuals. At the time of the offense, Adams was under the influence of drugs. He was charged with two counts of aggravated vehicular homicide resulting from driving under the influence, felonies of the second degree; [24] one count of driving while under the influence of alcohol or drugs, a first-degree misdemeanor; [25] and two counts of aggravated vehicular homicide due to reckless operation, felonies of the third degree.[26] Counts one and two also contained repeat-violent-offender specifications.[27] Adams had been convicted of felonious assault on November 4, 1987, in Cuyahoga County, Ohio.

{¶ 23} Adams was tried by a jury and convicted on all counts. He was sentenced to a maximum eight-year prison term on each aggravated-vehicular-homicide charge of the second degree and five years for each repeat-violent-offender specification. These sentences were ordered to be served consecutively. Adams also received a concurrent six-month sentence for the count of driving under the influence. The remaining aggravated-vehicular-homicide counts were merged into the other counts for a total prison term of 26 years. Adams appealed his conviction, the maximum and consecutive nature of his sentences, and the repeat-violent-offender specifications to the Lake County Court of Appeals.

{¶ 24} The appellate court concluded that although consecutive sentences may not be imposed unless a court makes findings not determined by a jury, *Blakely* and *Apprendi* do not apply to consecutive sentences. *State v. Adams*, Lake App. No. 2003–L–110, 2005-Ohio-1107, 2005 WL 583797, at ¶ 69. In considering the propriety of the repeat-violent-offender finding, the Eleventh District determined that because Adams's status as a repeat violent offender was based on a prior conviction and because *Apprendi* exempted prior convictions, there was no Sixth Amendment violation. Id. at ¶ 73. The appellate court also addressed Adams's

---

24. R.C. 2903.06(A)(1)(a) and (B)(2)(a).

25. R.C. 4511.19(A)(1) and (G)(1)(a).

26. R.C. 2903.06(A)(2) and (B)(3).

27. R.C. 2941.149(A).

maximum sentences of eight years for aggravated vehicular homicide. It explained that because Adams was a repeat violent offender, R.C. 2929.14(D)(2) required imposition of the maximum sentence. Id. at ¶ 74. Finally, the Eleventh District determined that the additional five-year sentence on each repeat-violent-offender specification did not violate *Apprendi* or *Blakely* because the required findings are not factual, but rather the result of judicial discretion. Id. at ¶ 78.

{¶ 25} We accepted Adams's first proposition of law to determine whether *Blakely* applies to maximum, consecutive, and repeat-violent-offender sentences.

## Jeannett Horn

{¶ 26} Jeannett S. Horn was indicted on August 6, 2002, on one count of drug possession, a first-degree felony,[28] and one count of conspiracy to possess drugs, a second-degree felony.[29] The case was tried to a jury, and Horn was convicted of the drug-possession charge.[30] The court found that Horn was a major drug offender due to the amount of drugs involved—more than 100 grams of crack cocaine. She was sentenced to ten years' imprisonment.

{¶ 27} On appeal, among other issues, Horn challenged her enhanced sentence under *Blakely* due to the trial court's finding that she was a major drug offender. *State v. Horn*, Ottawa App. No. OT–03–016, 2005-Ohio-5257, 2005 WL 2416033, at ¶ 21. The sentence was upheld by the Ottawa County Court of Appeals. We accepted jurisdiction to determine *Blakely*'s application to major-drug-offender sentences.

## Scope of Consideration

{¶ 28} The criminal defendants in these cases assert that Ohio's felony-sentencing structure violates the Sixth Amendment to the United States Constitution, and, according to Quinones, Section 5, Article I of the Ohio Constitution, because it requires impermissible judicial fact-finding before a prison term greater than the "presumptive" sentence is imposed. Foster challenges statutes that require judicial fact-finding for a prison sentence exceeding a minimum term[31] and for imposition of consecutive sentences.[32] Quinones challenges maximum[33] and consecutive sentences. Adams challenges maximum, consecutive, and

---

28. R.C. 2925.11(A) and (C)(4)(f).

29. R.C. 2923.01(A)(2) and (J)(2).

30. The state moved to dismiss the conspiracy charge, and the trial court granted the motion.

31. R.C. 2929.14(B).

32. R.C. 2929.14(E)(4).

33. R.C. 2929.14(C).

repeat-violent-offender sentences. Horn challenges her major-drug-offender sentence. All argue that their sentences are unconstitutional because a judge rather than jury found the existence of enhancing factors to lengthen their prison terms beyond the statutory presumptive terms. On the other hand, the state, appellee in the *Foster, Adams,* and *Horn* cases and appellant in the *Quinones* case, maintains, first, that Ohio's system does not unconstitutionally permit judges to exceed a statutory range and, second, that sentencing "facts" and sentencing "factors" differ.

{¶ 29} Because resolution of these discretionary appeals will affect hundreds of pending cases, a comprehensive approach to Ohio felony-sentencing statutes is required. We acknowledge the amici briefs,[34] which have assisted in sharpening these important issues.

### Waiver

{¶ 30} The state raises the issue of waiver as a preliminary matter in the *Foster* case and argues that we should apply a "plain error" test because Foster did not specifically object to the constitutionality of his sentence pursuant to *Apprendi* or its progeny at trial and did not raise the issue in the court of appeals. The state suggests that pursuant to *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, the error could not have been plain, i.e., "obvious," because *Blakely* was decided after Foster was sentenced. Furthermore, the state proposes that a plea of guilty or no contest waives all jury rights, including those established by *Apprendi.* Foster responds that the state itself did not raise the issue of waiver at the trial or appellate level.

{¶ 31} Waiver indicates an " 'intentional relinquishment or abandonment of a known right.' " *United States v. Olano* (1993), 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461. Foster could not have relinquished his sentencing objections as a known right when no one could have predicted that *Blakely* would extend the *Apprendi* doctrine to redefine "statutory maximum." *Smylie v. State* (Ind.2005), 823 N.E.2d 679, 687. In addition, we note that Blakely's guilty plea did not create an inference that he waived a jury's finding of the additional fact of "deliberate cruelty." See *Blakely,* 542 U.S. at 310, 124 S.Ct. 2531, 159 L.Ed.2d 403 ("When a defendant pleads guilty, the State is free to seek judicial sentence enhancements *so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding*" [emphasis added]). We have no such stipulations or consent to judicial fact-finding in any of the cases before us.

---

34. The American Civil Liberties Union of Ohio Foundation, Inc., filed an amicus brief in the *Foster* case; the Ohio Attorney General, the Ohio Association of Criminal Defense Lawyers, and the Ohio Prosecuting Attorneys Association filed in both the *Foster* and *Quinones* cases.

{¶ 32} Furthermore, *Blakely*'s Sixth Amendment holding has been applied retroactively to cases pending on direct appeal in states that have found it applicable to their statutes. See, e.g., *Lopez v. People* (Colo.2005), 113 P.3d 713, 716; *Smylie v. State*, 823 N.E.2d at 688 (Indiana); *State v. Natale* (2005), 184 N.J. 458, 494, 878 A.2d 724; *State v. Houston* (Minn.2005), 702 N.W.2d 268, 273.

{¶ 33} The state's propositions on waiver are rejected.[35]

### III.   Ohio's Felony–Sentencing Statutes Pre-*Blakely*

{¶ 34} Before passage of Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, effective July 1, 1996 ("S.B. 2"), Ohio had a predominantly indeterminate felony-sentencing structure in which a sentence was expressed in the form of a minimum and maximum prison term with the release decision in the hands of a parole board.   See Ohio Criminal Sentencing Commission, The Impact of Ohio's Senate Bill 2 on Sentencing Disparities (Apr. 19, 2002) 4–5.   With the enactment of S.B. 2, the General Assembly adopted a comprehensive sentencing structure that recognized the importance of "truth in sentencing."   The general purpose of S.B. 2 was to introduce certainty and proportionality to felony sentencing.   Accordingly, S.B. 2 established broad sentencing reforms.

{¶ 35} As a result, Ohio's felony-sentencing plan is a hybrid.   Aspects of indeterminate sentencing continue for certain offenses.   See, e.g., R.C. 2971.03 (authorizing indefinite sentences for certain sexually violent offenses).   But the plan is determinate for most offenses, for the court selects a specific prison term from different statutory ranges as determined by the level of the felony charged. The parole board no longer makes early-release decisions, and a sentence is subject to modification only by the judge.   The statutes themselves are extremely complex, as a brief survey will show.

### Statutory "Considerations" in Every Case:  R.C. 2929.11 and 2929.12

{¶ 36} Two statutory sections apply as a general judicial guide for every sentencing.   The first, R.C. 2929.11, states that the court "shall be guided by" the overriding purposes of felony sentencing, which are "to protect the public from future crime by the offender and others and to punish the offender."[36]   In achieving those purposes, the court shall also consider the need for incapacitation, deterrence, rehabilitation, and restitution.[37]   A felony sentence "shall be reason-

---

35. Although we declined to accept a proposition on waiver in Quinones's appeal, Quinones obtains the same benefit of the new rule, as he was sentenced on October 3, 2003, and *Blakely* was announced on June 24, 2004.

36. R.C. 2929.11(A).

37. Id.

ably calculated to achieve the two overriding purposes of felony sentencing" and be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." [38]   A sentence may not be based upon the race, ethnic background, gender, or religion of the offender.[39]

{¶ 37} The second general statute, R.C. 2929.12, grants the sentencing judge discretion "to determine the most effective way to comply with the purposes and principles of sentencing." [40]   R.C. 2929.12(A) directs that in exercising that discretion, the court shall consider, along with any other "relevant" factors, the seriousness factors set forth in divisions (B) and (C) and the recidivism factors in divisions (D) and (E) of R.C. 2929.12.   These statutory sections provide a nonexclusive list for the court to consider.

{¶ 38} Seriousness factors, i.e., factors indicating that a defendant's conduct is "more serious than conduct normally constituting the offense," include the following considerations:  whether the physical or mental injury was worsened "because of the physical or mental condition or age of the victim";  whether the offense caused serious physical, psychological, or economic harm to the victim; whether the defendant held a public office or position of trust in the community, and the offense related to that office or position;  whether the defendant's position obliged him to prevent the offense or bring offenders to justice;  whether the defendant used his position to facilitate the offense or is likely to influence the future conduct of others;  whether the defendant's relationship with the victim facilitated the offense;  whether the defendant committed the offense for hire or as a part of an organized criminal activity;  whether the defendant was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion;  and whether, for specified offenses, the offense was committed by a household member "in the vicinity of one or more children," and the defendant or his victim is a parent or custodian of at least one of those children.[41]

{¶ 39} Factors indicating that "the offender's conduct is less serious than conduct normally constituting the offense" include whether the victim induced or facilitated the offense, whether there was strong provocation, whether the offender either did not cause or did not expect to cause physical harm to anyone

---

38.   R.C. 2929.11(B).

39.   R.C. 2929.11(C).

40.   R.C. 2929.12(A).

41.   R.C. 2929.12(B)(1) through (9).

or anything, and whether there are substantial mitigating grounds that do not reach the level of a defense.[42]

{¶ 40} With respect to recidivism factors, the court is required to consider whether the defendant is more or less likely to commit future crimes. Factors that indicate a likelihood of reoffending are whether the defendant was already under the control of the court, whether there are previous adjudicated delinquencies or criminal convictions, whether the defendant has not responded favorably to previous sanctions or attempts at rehabilitation, whether the defendant refuses to acknowledge a drug- or alcohol-abuse problem or refuses treatment, and whether the defendant shows no "genuine remorse." [43]

{¶ 41} Along with "any other relevant factors," factors that indicate that the defendant is not likely to commit future crimes are an absence of delinquency adjudications or criminal convictions, a law-abiding life for a significant number of years before the current offense, an unlikelihood that the circumstances under which the offense was committed will recur, and genuine remorse.[44]

{¶ 42} It is important to note that there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to "consider" the statutory factors.

### Presumptions, Guidance, and Ranges: R.C. 2929.13 and 2929.14

{¶ 43} R.C. 2929.13, which follows the general-guidance statutes, provides directives that relate to specific felony degrees. R.C. 2929.13(D) sets forth a presumption in favor of prison for higher level felonies and felony drug offenses, and R.C. 2929.13(B) creates a preference for (but not a presumption in favor of) community control (formerly probation) for lower-level felonies. R.C. 2929.13(B) allows, but does not mandate, findings before imprisonment for felonies of the fourth or fifth degree, unless the offense involves mandatory terms. Certain findings require a prison sentence; [45] a lack of specified findings, in combination with other considerations, requires community control.[46]

{¶ 44} R.C. 2929.14 establishes the ranges of prison terms for the five degrees of felony offenses.[47] This statute also restricts a court's discretion by imposing fact-finding obligations upon judges before they impose more than the mini-

---

42. R.C. 2929.12(C)(1) through (4).

43. R.C. 2929.12(D).

44. R.C. 2929.12(E).

45. R.C. 2929.13(B)(2)(a).

46. R.C. 2929.13(B)(2)(b).

47. R.C. 2929.14(A).

mum [48] or maximum [49] prison terms. The statute also includes mandatory prison terms,[50] special terms for repeat violent offenders [51] and major drug offenders,[52] specifications, consecutive terms,[53] and postrelease control,[54] as well as provisions related to specific offenses [55] and shock incarceration.[56]

## Nonprison Sanctions: R.C. 2929.15 through 2929.18

{¶ 45} R.C. 2929.15 through 2929.18 authorize a range of sanctions other than imprisonment, allowing a sentencing judge to choose a combination of punishments that will best serve the overriding purposes of felony sentencing.[57] If a court is authorized to grant community control [58] in a particular case, it may consider residential sanctions,[59] nonresidential sanctions,[60] and financial sanctions,[61] including mandatory fines for certain offenses.[62]

## The Sentencing Hearing: R.C. 2929.19

{¶ 46} A sentencing hearing is required before a felony sentence is imposed.[63] At the hearing, the defendant, prosecuting attorney, and the victim or the victim's representative may present relevant information.[64] Before imposing sentence,

---

48. R.C. 2929.14(B).

49. R.C. 2929.14(C).

50. R.C. 2929.14(D).

51. R.C. 2929.14(D)(2)(a) and (b).

52. R.C. 2929.14(D)(3)(a) and (b).

53. R.C. 2929.14(E).

54. R.C. 2929.14(F).

55. R.C. 2929.14(G), (I), and (J).

56. R.C. 2929.14(K).

57. R.C. 2929.12(A).

58. R.C. 2929.15.

59. R.C. 2929.16.

60. R.C. 2929.17.

61. R.C. 2929.18.

62. R.C. 2929.18(B)(1).

63. R.C. 2929.19.(A)(1).

64. Id.

the judge shall consider the record, any presentence investigation report, and any victim-impact statement.[65]   In imposing a prison term for a felony sentence, the judge shall impose a "stated" prison term [66] and provide various notifications as required.[67]   See *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864 (R.C. 2929.19(B)(3)(c) and (d) require notification of postrelease control at hearing and in journal entry); *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837 (R.C. 2929.19(B)(5) and 2929.15(B) require certain community-control notifications to be given to offender at sentencing hearing).

{¶ 47} By no means is this everything that must be considered at the sentencing hearing, for there are statutes relevant only to sexually oriented offenses, alcohol-related offenses, drug offenses, and certain violent offenses,[68] which may lead to different procedural requirements.

### Appellate Review: R.C. 2953.08(G)

{¶ 48} The General Assembly also enacted appellate review of sentences as part of S.B. 2. R.C. 2953.08(G)(1), as amended effective October 10, 2000,[69] allows an appellate court to remand a case to the sentencing court to make certain findings, specifically, those findings required for imposing prison terms for lower-level felonies,[70] for granting community control for high-level felonies,[71] for imposing consecutive sentences,[72] or for granting judicial release.[73]   The appellate court must review the record, including the findings underlying the sentence or modification.[74]   Employing a clear-and-convincing-evidence standard of review,[75] the appellate court may "increase, reduce, or otherwise modify a sentence" or may vacate the sentence and remand the matter for resentencing if the record

---

65.  R.C. 2929.19(B)(1).

66.  R.C. 2929.19(B)(3)(a).

67.  R.C. 2929.19(B)(3)(b) through (f), (4), and (5).

68.  See, e.g., R.C. 2929.13(E) through (H), as well as R.C. 2929.14(D) (mandatory prison terms).

69.  148 Ohio Laws, Part II, 3418–3419.

70.  R.C. 2929.13(B).

71.  R.C. 2929.13(D).

72.  R.C. 2929.14(E)(4).

73.  R.C. 2929.20(H).

74.  R.C. 2953.08(F).

75.  R.C. 2953.08(G)(2).

does not support the judge's findings or the sentence is otherwise contrary to law under R.C. 2953.08(G)(2)(a) and (b).

{¶ 49} In summary, as a result of S.B. 2, Ohio has a comprehensive and complicated felony-sentencing plan, both determinate and indeterminate in nature and containing aspects of presumptive sentencing. Although Ohio is not a true "mandatory guidelines" or matrix state where sentencing is confined within designated presumptive prison-term ranges unless aggravators are found, Ohio, like a number of other states, must now engage in the difficult process of disassembling its comprehensive sentencing-reform legislation under the *Blakely* mandate. As a result, there are portions of the state's sentencing statutes that are eviscerated by *Blakely*.

## IV. *Blakely* as Applied to Ohio Statutes

{¶ 50} In addition to the *Quinones* case before us, the Eighth Appellate District has applied *Blakely* to repeat-violent-offender[76] and major-drug-offender[77] sentencing enhancements. Only two other districts have applied *Blakely* to some aspect of Ohio's sentencing law.[78] Most Ohio appellate courts have determined that *Blakely* is inapplicable. They have distinguished Ohio's plan from Washington's grid system,[79] or emphasized a sentencing court's inability to exceed a statutory range through fact-finding,[80] or characterized required findings as traditional sentencing factors,[81] or read the "prior conviction" exception to *Apprendi* broadly to uphold challenged sentences.[82] These are also the argu-

---

76. See *State v. Sims*, 8th Dist. No. 84090, 2005-Ohio-1978, 2005 WL 984499, ¶ 47; *State v. Malcolm*, 8th Dist. No. 85351, 2005-Ohio-4133, 2005 WL 1923593, ¶ 10.

77. See *State v. Short*, 8th Dist. No. 83804, 2005-Ohio-4578, 2005 WL 2100969, ¶ 39; *State v. Moore*, 8th Dist. No. 85825, 2006-Ohio-305, 2006 WL 202756, ¶ 13.

78. The First District applied *Blakely* to maximum sentences in *State v. Bruce*, 159 Ohio App.3d 562, 2005-Ohio-373, 824 N.E.2d 609, and to sentences exceeding the minimum on a first prison term in *State v. Montgomery*, 159 Ohio App.3d 752, 2005-Ohio-1018, 825 N.E.2d 250. The Eleventh District applied *Blakely* to repeat-violent-offender sentencing enhancements in *State v. Payne*, 11th Dist. No. 2004–L–118, 2005-Ohio-7043, 2005 WL 3610429.

79. See, e.g., *State v. Lett*, 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281; *State v. Ward*, 4th Dist. No. 04CA25, 2005-Ohio-1580, 2005 WL 737578, ¶ 14; *State v. Curlis*, 6th Dist. No. WD–04–032, 2005-Ohio-1217, 2005 WL 635025, ¶ 18; *State v. Burns*, 9th Dist. No. 22198, 2005-Ohio-1459, 2005 WL 711927, ¶ 4–5; *State v. Berry*, 159 Ohio App.3d 476, 2004-Ohio-6027, 824 N.E.2d 543, ¶ 48.

80. *State v. Trubee*, 3d Dist. No. 9–03–65, 2005-Ohio-552, 2005 WL 335833, ¶ 23; *State v. Iddings*, 5th Dist. No. 2004CAA06043, 2004-Ohio-7312, 2004 WL 3563921, ¶ 12; *State v. Goins*, 7th Dist., No. 02 CA 68, 2005-Ohio-1439, 2005 WL 704865, ¶ 111; *State v. Rupert*, 11th Dist. No. 2003–L–54, 2005-Ohio-1098, 2005 WL 583796, ¶ 48.

81. *State v. Abdul–Mumin*, 10th Dist. No. 04AP–485, 2005-Ohio-522, 2005 WL 315062, ¶ 32.

82. *State v. Sour*, 2d Dist. No. 19913, 2004-Ohio-4048, 2004 WL 1728579, ¶ 8.

ments of the state against Foster, Quinones, and Adams. Nevertheless and unfortunately, *Blakely* is misunderstood if it is seen as inapplicable to Ohio.

{¶ 51} The state first attempts to distinguish Ohio's sentencing plan from Washington's. It contends that *Blakely* does not apply because in Ohio, the top of the range is the relevant "statutory maximum," of which the defendant is aware before the entry of verdict or plea. But by focusing on the statutory ceiling and arguing that a court may select a term anywhere within the range, the state ignores the General Assembly's use of the word "shall" at crucial points in the legislative scheme. Unlimited judicial discretion to sentence within a range is not currently authorized by statute. If required judicial facts are not found, certain sentences may not be imposed. These limitations create presumed statutory maximums that implicate Sixth Amendment protection. As Foster argues, his "statutory maximum" sentence was limited to two years because the jury did not make the findings of fact required to sentence him to consecutive sentences or to sentence him to more than the minimum. Similarly, Quinones argues that a jury's verdict, standing alone, authorizes only community-control sanctions for fourth- and fifth-degree felonies, the minimum term of imprisonment for felonies of the first, second, and third degrees, and concurrent terms. As a result, Quinones argues that he should have received only community control for the unlawful-sexual-conduct-with-a-minor counts and a three-year prison term on the rape count. In a similar vein, Adams argues that a jury's verdict alone does not authorize maximum or consecutive sentences or an additional sentence on a repeat-violent-offender specification because specific findings must first be made by the court before those prison terms are imposed.

{¶ 52} Second, the state argues that Ohio's required findings are merely "sentencing enhancements" or "traditional sentencing factors" rather than factual "elements" of a crime, and, therefore, the Sixth Amendment right to a jury is not implicated. Adams, however, argues that the Eleventh District was "merely playing with words" when it chose to label the findings under R.C. 2929.14 as nonfactual findings. The Supreme Court of the United States has repeated its holding that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—*no matter how the State labels it*—must be found by a jury beyond a reasonable doubt." (Emphasis added.) *Ring v. Arizona,* 536 U.S. at 602, 122 S.Ct. 2428, 153 L.Ed.2d 556, citing *Apprendi,* 530 U.S. at 482–483, 120 S.Ct. 2348, 147 L.Ed.2d 435. As Justice Scalia noted in his *Ring* concurrence, "I believe that the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives—whether the statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by the jury beyond a reasonable doubt." Id. at 610, 122 S.Ct. 2428, 153 L.Ed.2d 556 (Scalia, J., concurring).

{¶ 53} Neither state argument prevails. Certain aspects of Ohio's felony-sentencing plan are unconstitutional when measured against the Sixth Amendment principles established in *Blakely*. The reason for this is that, like many state legislatures that attempted sentencing reform, the Ohio General Assembly, through its enactment of S.B. 2 in 1996, authorized narrower sentencing ranges and restricted the discretion of trial judges by *mandating* that underlying "findings" be made before increasing what seems to be a presumptive sentence. In other words, the sentence is not determined "solely on the basis of facts reflected in the jury verdict or admitted by the defendant," as *Blakely* requires. (Emphasis omitted.) Id., 542 U.S. at 303, 124 S.Ct. 2531, 159 L.Ed.2d 403.

{¶ 54} The parties have raised five separate sentencing areas as questionable when they are measured against *Blakely*: (1) imposing more than the minimum prison term for those who have never served a prison term, (2) imposing the maximum term, (3) imposing consecutive terms, (4) imposing a prison term rather than community control for fourth- and fifth-degree felons, and (5) imposing repeat-violent-offender or major-drug-offender enhancements. We agree with respect to four of the five that Ohio judges are not merely advised to consider certain sentencing factors, but are statutorily *required* to make specific findings before imposing a sentence beyond that presumed solely by a jury verdict or admission of a defendant.

{¶ 55} In conducting a *Blakely* analysis, we must determine whether a presumptive sentence is created and whether judicial fact-finding is required to exceed that sentence. Stated another way, is the sentence allowed simply as a result of a conviction or plea or must the judge find additional facts first?

More than the Minimum Prison Term

{¶ 56} Foster challenges R.C. 2929.14(B), which states:

{¶ 57} "[I]f *the court* imposing a sentence upon an offender for a felony *elects or is required to impose a prison term* on the offender, the *court shall impose the shortest prison term* authorized for the offense pursuant to division (A) of this section [setting forth the basic ranges], *unless one or more of the following* applies:

{¶ 58} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

{¶ 59} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." (Emphasis added.)

{¶ 60} Thus, Ohio has a presumptive minimum prison term that must be overcome by at least one of two judicial findings. For someone who has never been to prison before (not necessarily a first-time offender), the court must find

that the shortest term will "demean the seriousness" of the crime or will inadequately protect the public; otherwise, the court must find that the offender has already been to prison to impose more than a minimum term. R.C. 2929.14(B)(2).

{¶ 61} Under R.C. 2929.14(B), therefore, a court is not authorized to exceed the shortest prison term unless it makes the additional findings. *State v. Edmonson* (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (findings required, reasons not); *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473 (findings required for first offender). Since a jury verdict alone does not determine the sentence, R.C. 2929.14(B) violates *Blakely* principles.

## The Maximum Prison Term

{¶ 62} Quinones and Adams challenge R.C. 2929.14(C), which states that "*the court* imposing a sentence upon an offender for a felony *may impose the longest prison term* authorized for the offense pursuant to division (A) of this section *only* upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." (Emphasis added.)

{¶ 63} Although this statute does not use the word "findings," our holdings in *State v. Edmonson*, 86 Ohio St.3d at 329, 715 N.E.2d 131, and *State v. Evans*, 102 Ohio St.3d 240, 2004-Ohio-2659, 809 N.E.2d 11, recognize that R.C. 2929.14(C) is mandatory and prohibits maximum sentences unless the required findings of fact are made beforehand. The First Appellate District applied an *Apprendi* and *Blakely* analysis to determine that judicial fact-finding to reach a maximum prison sentence was improper. It then applied the pertinent sentencing statutes without the unconstitutional findings and reduced the sentence to what it could have been without the judicial finding of "worst form of the offense," that is, one year less than the ten-year maximum for a first-degree felony. *State v. Bruce*, 159 Ohio App.3d 562, 2005-Ohio-373, 824 N.E.2d 609, ¶ 9–10.

{¶ 64} *Bruce* was correct in its analysis, if not in its solution. We have consistently held that R.C. 2929.14(C) requires that specific findings be made before a maximum sentence is authorized. *Evans*, 102 Ohio St.3d 240, 2004-Ohio-2659, 809 N.E.2d 11, at ¶ 15; *Edmonson*, 86 Ohio St.3d at 325, 715 N.E.2d 131. As it stands, R.C. 2929.14(C) creates a presumption to be overcome only by judicial fact-finding. It does not comply with *Blakely*.

## Consecutive Prison Terms

{¶ 65} Foster, Quinones, and Adams challenge their consecutive terms. R.C. 2929.14(E)(4) requires the court to find that "the consecutive service is necessary

to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." In addition, at least one of three more findings of fact must be found: that the offender was already under control of the court due to an earlier conviction,[83] that at least two of the offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflects the seriousness of the conduct,[84] or that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public." [85]

{¶ 66} While other state courts have held that their statutes on consecutive sentences do not violate *Blakely,*[86] Ohio appears to be unique in having a rule that sentences of imprisonment shall be served concurrently. See R.C. 2929.41(A); *State v. Barnhouse,* 102 Ohio St.3d 221, 2004-Ohio-2492, 808 N.E.2d 874, at ¶ 11. R.C. 2929.41(A) states, *"Except as provided in* division (B) of this section, *division (E) of section 2929.14,* or division (D) or (E) of section 2971.03 of the Revised Code, *a prison term,* jail term, or sentence of imprisonment *shall be served concurrently* with any other prison term." (Emphasis added.) Thus, except for certain enumerated statutes imposing nondiscretionary consecutive terms,[87] judicial fact-finding must occur before consecutive sentences may be imposed under R.C. 2929.14(E)(4). We have held previously that R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) require trial courts that impose consecutive sentences to make the statutorily enumerated findings and to give reasons at the sentencing hearing to support those findings for review on appeal. *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.

{¶ 67} Thus, with limited exceptions, the Ohio Revised Code provides that consecutive sentences in Ohio may not be imposed except after additional fact-finding by the judge. In *State v. Lett,* 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281, at ¶ 42, an en banc decision, the Eighth Appellate District held that *Blakely is* inapplicable to consecutive sentencing because "the facts found by the court do not increase the maximum penalty for an individual offense." This is true; nevertheless, because the total punishment increases through consecutive sentences only after judicial findings beyond those determined by a jury or

---

83. R.C. 2929.14(E)(4)(a).

84. R.C. 2929.14(E)(4)(b).

85. R.C. 2929.14(E)(4)(c).

86. See, e.g., *Smylie v. State* (Ind.2005), 823 N.E.2d 679, 686–687; *State v. Abdullah* (2005), 184 N.J. 497, 512–514, 878 A.2d 746; *State v. Cubias* (2005), 155 Wash.2d 549, 120 P.3d 929.

87. R.C. 2929.14(E)(1) through (3).

stipulated to by a defendant, R.C. 2929.14(E)(4) violates principles announced in *Blakely*.

### Prison Rather than Community Control for Lower-Level Felonies

{¶ 68} Community control is the default sentence for felonies of the fourth and fifth degree, except for those identified as mandatory prison offenses. R.C. 2929.13(B)(2)(b) states that "if the court does not make a finding described in division (B)(1)(a), (b), (c), (d), (e), (f), (g), (h), or (i) of this section [88] and if the court, after considering the factors set forth in section 2929.12 of the Revised Code, finds that a community-control sanction or combination of community control sanctions is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code, the court shall impose a community control sanction or combination of community control sanctions upon the offender." [89]   On the other hand, if the court makes one of the findings in R.C. 2929.13(B)(1)(a) through (i) and also finds that "a prison term is consistent with the purposes and principles of sentencing" and that "the offender is not amenable to an available community control sanction," the court shall impose a prison term. [90]

{¶ 69} At first blush, this portion of the statute appears to violate *Blakely*, but on closer inspection, it does not.   If the appropriate findings are made, the court

---

88.   {¶ a} Those sections provide:

{¶ b} "[I]n sentencing an offender for a felony of the fourth or fifth degree, the sentencing court shall determine whether any of the following apply:

{¶ c} "(a) In committing the offense, the offender caused physical harm to a person.

{¶ d} "(b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.

{¶ e} "(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.

{¶ f} "(d) The offender held a public office or position of trust and the offense related to that office or position;  the offender's position obliged the offender to prevent the offense or to bring those committing it to justice;  or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.

{¶ g} "(e) The offender committed the offense for hire or as part of an organized criminal activity.

{¶ h} "(f) The offense is a sex offense that is a fourth or fifth degree felony violation [of certain enumerated statutes].

{¶ i} "(g) The offender at the time of the offense was serving, or the offender previously had served, a prison term.

{¶ j} "(h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.

{¶ k} "(i) The offender committed the offense while in possession of a firearm."

89.   R.C. 2929.13(B)(2)(b).

90.   R.C. 2929.13(B)(2)(a).

has no discretion and must impose a prison term; however, the statute does not prevent a court from imposing a prison term without these findings. There is no presumption in favor of community control, in other words. If no findings are made under R.C. 2929.13(B)(1)(a) through (i), the court must find that a community-control sanction meets the principles of sentencing under R.C. 2929.11 before it must impose community control. Thus, a judge who does not make one of the (B)(1) findings and does not find that community control is a sufficient sanction could still impose a prison term.[91]

{¶ 70} R.C. 2929.13(B)(2)(a) would *permit* a judge to impose prison rather than community control *without* R.C. 2929.13(B) findings. This subtle distinction was found to be constitutional in *McMillan v. Pennsylvania* (1986), 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67. There, with respect to a statute involving use of a firearm during an offense, the court was required to impose a mandatory minimum prison term *if findings were made*—yet the court could still have imposed a greater term without the findings. R.C. 2929.13(B)(2)(b) and 2929.13(B)(2)(a) do not violate *Blakely* by *requiring* the sentencing court to make additional findings of fact before increasing a penalty at the fourth- or fifth-degree-felony level.

Repeat–Violent–Offender and Major–Drug–Offender Penalty Enhancements

{¶ 71} Adams challenges his sentence enhancement as a repeat violent offender and Horn contests her penalty enhancement as a major drug offender, as being violative of *Blakely*. Unlike all other penalty-enhancing specifications, the court, not the jury, makes the necessary factual findings for convicting the offender of being a repeat violent offender or a major drug offender. See R.C. 2941.149(B) and 2941.1410(B). With respect to the repeat violent offender, R.C. 2929.14(D)(2)(a) states:

{¶ 72} "If an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification * * * that the offender is a repeat violent offender, the court shall impose a prison term from the range of terms authorized for the offense under division (A) of this section that may be the longest term in the range * * *. If the court finds that the repeat violent offender, in committing the offense, caused any physical harm that carried a substantial risk of death to a person or that involved substantial permanent incapacity or substantial permanent disfigurement of a person, the court shall impose the longest prison term from the range of terms authorized for the offense under division (A) of this section."

---

91. As noted by Griffin and Katz, "If the particular [R.C. 2929.13(B)] combinations are not found, the judge is simply guided by the general principles of sentencing, as occurs with third degree nondrug felonies." 1 Griffin & Katz, Ohio Felony Sentencing Law (2005) 761, Section 7:11.

{¶ 73} Similar to imposing prison rather than community control for lower-level felonies, the findings in R.C. 2929.14(D)(2)(a) do not violate *Blakely*. The foregoing language shows that a judge is not compelled to make findings before selecting the longest prison term under R.C. 2929.14(D)(2)(a). A judge still had the ability to impose the longest prison term without making these findings.

{¶ 74} Subsection (D)(2)(b), however, is another matter. It states:

{¶ 75} "[T]he *court may impose* on the offender *an additional definite prison term* of one, two, three, four, five, six, seven, eight, nine, or ten years *if the court finds that both of the following apply* * * *:

{¶ 76} "(i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

{¶ 77} "(ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense." (Emphasis added.)

{¶ 78} This section requires the court to make findings before imposing an additional penalty on repeat violent offenders and thus violates *Blakely*.

{¶ 79} For the major drug offender, R.C. 2929.14(D)(3)(a) requires that a ten-year term be imposed, and that term cannot be reduced. The determination that a defendant is a major drug offender is dependent upon the amount of the controlled substance. Subsection (b), however, provides: *"The court * * * may impose an additional prison term* of one, two, three, four, five, six, seven, eight, nine, or ten years, *if the court,* with respect to the term imposed under division (D)(3)(a) of this section and, if applicable, divisions (D)(1) and (2) of this section, *makes both of the findings* set forth in divisions (D)(2)(b)(i) and (ii) of this section." (Emphasis added.)

{¶ 80} As with R.C. 2929.14(D)(2)(b), R.C. 2929.14(D)(3)(b) cannot withstand a *Blakely* challenge, because judicial fact-finding is required, and a court may not add the additional penalties based solely on the jury's verdict.

{¶ 81} For example, in Horn's case, the jury determined that she possessed in excess of 100 grams of crack cocaine. Thus, the court's finding that she was a major drug offender is based on the jury's verdict. R.C. 2929.14(D)(3)(a) mandates that she receive the longest term; therefore, her 10-year sentence does not offend *Blakely*. However, any additional penalty under R.C. 2929.14(D)(3)(b)

would have required judicial fact-finding and would have violated *Blakely*. Because Horn did not receive any additional penalty, her sentence complies with *Blakely*.

## *Blakely*'s Impact

{¶ 82} Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas. As was reaffirmed by the Supreme Court in *Booker*, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244, 125 S.Ct. 738, 160 L.Ed.2d 621.

{¶ 83} Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences, they are unconstitutional. Because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before repeat-violent-offender and major-drug-offender penalty enhancements are imposed, they are unconstitutional. *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

## V. Remedy

{¶ 84} Ohio's felony-sentencing structure may be severely wounded, but it is not fatally unsound. Our holdings are limited to areas where the statutes are *Blakely*-deficient. As a result, we must decide on a remedy. The question becomes, which remedy to apply?

{¶ 85} Since *Blakely* was decided, other states have examined their sentencing statutes and crafted remedies in response to the *Apprendi–Blakely* error.[92] These states have come to varying conclusions regarding the impact of *Blakely*, with no two supreme courts resolving the constitutional issues identically. The selected remedies fall into three broad categories: requiring sentencing juries, reducing sentencing to minimum terms until the state legislature acts, and severing the offending statutory sections.

---

92. But, see, *People v. Black* (2005), 35 Cal.4th 1238, 1257–1261, 29 Cal.Rptr.3d 740, 113 P.3d 534 (no Sixth Amendment impediment in California's sentencing scheme when a judge increases a sentence above the presumptive term); *Lopez v. People* (Colo.2005), 113 P.3d 713, 726 (Colorado's aggravated-sentencing statute found constitutional because "aggravated sentences can be based on *Blakely*-compliant or *Blakely*-exempt facts").

{¶ 86} In considering the Federal Sentencing Guidelines, the United States Supreme Court observed that the remedial question for a *Blakely* violation is to be resolved by looking to legislative intent. *Booker,* 543 U.S. at 246, 125 S.Ct. 738, 160 L.Ed.2d 621. We note that the overriding goals of Ohio's sentencing scheme are to protect the public and punish the offender.[93] S.B. 2 delegated the role of determining the applicability of sentencing factors to judges rather than to juries to meet these overriding goals. With this context in mind, we examine the possible remedies.

{¶ 87} One way to comply with *Blakely* is to provide for jury involvement in sentencing, as is done in capital cases.[94] We have already held that a common pleas judge lacks jurisdiction to conduct a jury-sentencing hearing pursuant to the current statutes. *State ex rel. Mason v. Griffin,* 104 Ohio St.3d 279, 2004-Ohio-6384, 819 N.E.2d 644. In *Griffin,* we granted a writ of prohibition to prevent the judge from conducting a sentencing hearing before a jury in a noncapital case. Certainly the General Assembly may enact legislation to authorize juries to find beyond a reasonable doubt all facts essential to punishment in felony cases, but it has not yet done so. We cannot say that, if faced with the *Apprendi* and *Blakely* decisions before passing S.B. 2, the General Assembly would have enacted such legislation. The General Assembly undoubtedly never anticipated that the judicial-finding requirements contained within S.B. 2 would be held unconstitutional. We therefore reject this potential solution.

{¶ 88} A second way to comport with *Blakely* would be to accept the criminal defendants' request that we interpret all the affected statutes as imposing only the minimum sentence for those entering prison for the first time and as preventing maximum sentences, consecutive sentences, and enhanced penalties such as repeat-violent-offender and major-drug-offender prison sentences, because all require judicial fact-finding.[95] The criminal defendants and their amici urge us to hold that for purposes of *Apprendi, Blakely,* and *Booker,* the

---

93. R.C. 2929.11.

94. See *Smylie v. Indiana,* 823 N.E.2d at 685 (*Blakely* and the Sixth Amendment require that Indiana's sentencing statute be "modified to require jury findings on facts in aggravation").

95. See *State v. Brown* (2004), 209 Ariz. 200, 203, 99 P.3d 15 (the " 'maximum sentence' for *Apprendi* analysis in this case is the five-year presumptive sentence"); *State v. Shattuck* (Minn.2004), 689 N.W.2d 785 (the presumptive sentence is the maximum penalty authorized solely by the jury's verdict for purposes of *Apprendi* ); *State v. Provost,* 2005 VT 134, 896 A.2d 55, ¶ 21 ("until the Legislature designs a constitutionally permissible means by which the factors can be weighed, there can be no basis for adjusting defendant's sentence above the presumptive term") *State v. Allen* (2005), 359 N.C. 425, 437, 615 S.E.2d 256 ("the 'statutory maximum' to which *Apprendi* applies is not the maximum sentence authorized by statute; rather, for *Apprendi* purposes, 'statutory maximum' means the maximum sentence authorized by the jury verdict or the defendant's admissions").

"statutory maximum" in Ohio is the presumptive term—i.e., the minimum, concurrent term—rather than the longest possible term. For example, on resentencing, this would mean a prison term of two years instead of nine years for Foster and three years rather than 11 ½ years for Quinones.

{¶ 89} The General Assembly provided a sentencing scheme of "guided discretion" for judges, intending that the required findings guide trial courts to select sentences within a range rather than to mandate specific sentences within that range. When mandatory sentences are intended, they are expressed.[96] We, therefore, reject the criminal defendants' proposed remedy of presumptive minimum sentences, for we do not believe that the General Assembly would have limited so greatly the sentencing court's ability to impose an appropriate penalty.

{¶ 90} A third possibility for *Blakely* compliance is the severance remedy. *Booker* provided a blueprint for this remedy by converting the guidelines from mandatory to advisory through severance of the offending portions.[97] Where sentencing is left to the unguided discretion of the judge, there is no judicial impingement upon the traditional role of the jury. *Blakely*, 542 U.S. at 308–309, 124 S.Ct. 2531, 159 L.Ed.2d 403. States that have applied a *Booker* remedy include New Jersey and Indiana.[98]

{¶ 91} As Justice Stevens clarified in *Booker*, "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. See *Apprendi*, 530 U.S., at 481, 120 S.Ct. 2348 [147 L.Ed.2d 435]; *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079 [93 L.Ed. 1337] (1949). Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act of 1984] the provisions that make the

---

96. For example, R.C. 2929.14(D)(1)(a), (c), (d), and (f).

97. The severed portions were "the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure), see 18 USC § 3553(b)(1) (Supp.2004), and the provision that sets forth standards of review on appeal, including *de novo* review of departures from the applicable Guidelines range, see § 3742(e) (main ed. and Supp.2004)." *Booker*, 543 U.S. at 259, 125 S.Ct. 738, 160 L.Ed.2d 621.

98. In *State v. Natale*, 184 N.J. 458, 878 A.2d 724, the New Jersey Supreme Court eliminated presumptive terms from the state's sentencing statute, allowing trial courts to use full discretion in imposing sentences within the range. Similarly, in *Smylie v. State*, 823 N.E.2d 679, 685–686, the Indiana Supreme Court severed portions of Indiana's sentencing statute that mandated a fixed term and permitted judicial discretion in finding aggravating and mitigating circumstances to deviate from the fixed term.

Guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented possible. For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Booker*, 543 U.S. at 234, 125 S.Ct. 738, 160 L.Ed.2d 621.

{¶ 92} As we believe the severance remedy to be the most appropriate, we next turn to Ohio law regarding severance.

### Applying the *Booker* Remedy

{¶ 93} We presume that compliance with the United States and Ohio Constitutions is intended and that an entire statute is intended to be effective. R.C. 1.47(A) and (B). Furthermore, R.C. 1.50 states, "If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, *the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable.*" (Emphasis added.)

{¶ 94} When this court holds that a statute is unconstitutional, severance may be appropriate. R.C. 1.50; see, e.g., *Simmons–Harris v. Goff* (1999), 86 Ohio St.3d 1, 17, 711 N.E.2d 203 (severing the portion of a bill that violated the one-subject rule); but, see, *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 500, 715 N.E.2d 1062 (severance rejected as tantamount to judicial legislation); *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 523–524, 644 N.E.2d 369 (severing the portion of a statute that violated Section 11, Article III of the Ohio Constitution, which authorizes the General Assembly to regulate application process with respect to pardons but not commutations or reprieves); *State ex rel. Ohio AFL–CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 230, 631 N.E.2d 582 (severing the portion of a bill that violated the one-subject rule); *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections* (1991), 62 Ohio St.3d 145, 149, 580 N.E.2d 767 (same). Severance is suitable, however, only where it satisfies our well-established standard. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d at 500, 715 N.E.2d 1062 (where bill violated one-subject rule, severance was not appropriate because "any attempt on our part to carve out a primary subject by identifying and assembling what we believe to be key or core provisions of the bill would constitute a legislative exercise wholly beyond the province of this court").

{¶ 95} The severance test was first pronounced in *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28, quoting *State v. Bickford* (1913), 28 N.D. 36, 147 N.W. 407, paragraph 19 of the syllabus. Three questions are to be answered before severance is appropriate. " '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the

whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?' "

{¶ 96} After examining Ohio's felony-sentencing statutes, we determine that severance of the *Blakely*-offending portions meets the *Geiger* test. All references to mandatory judicial fact-finding properly may be eliminated in the four areas of concern. Without the mandatory judicial fact-finding, there is nothing to suggest a "presumptive term." To explain Ohio's "statutory maximum" for purposes of *Apprendi* and its progeny, the maximum prison term authorized by the jury verdict or the facts admitted by a defendant upon acceptance of a plea is the top of the sentencing range for the crime of which the defendant is convicted. For example, if the offender is convicted of a first-degree felony, the "statutory maximum" is ten years under R.C. 2929.14(A)(1).

{¶ 97} The following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive terms. R.C. 2953.08(G), which refers to review of statutory findings for consecutive sentences in the appellate record, no longer applies. We also excise R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent offenders and major drug offenders.

{¶ 98} This approach conforms to the *Geiger* standard. Excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender. See R.C. 2929.11(A). The excised portions remove only the presumptive and judicial findings that relate to "upward departures," that is, the findings necessary to increase the potential prison penalty. We add no language, and the vast majority of S.B. 2, which is capable of being read and of standing alone, is left in place.

{¶ 99} We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant. We further hold that R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of consecutive prison terms. Finally, we hold that R.C. 2929.14(D)(2)(b) and (3)(b) are capable of being severed. After the severance, judicial fact-finding is not

required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications. The appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies.

{¶ 100} Accordingly, we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences. By vesting sentencing judges with full discretion, it may be argued, this remedy vitiates S.B. 2's goals, particularly with respect to reducing sentencing disparities and promoting uniformity. Indeed, the dissenters in *Blakely* fretted that as a result of the *Apprendi* expansion, "[o]ver 20 years of sentencing reform are all but lost* * *." 542 U.S. at 326, 124 S.Ct. 2531, 159 L.Ed.2d 403 (O'Connor, J., dissenting). It may well be that in the future, the Ohio Criminal Sentencing Commission may recommend *Blakely*-compliant statutory modifications to the General Assembly that will counteract these, among other, concerns. Nevertheless, we are constrained by the principles of separation of powers and cannot rewrite the statutes.

{¶ 101} Significantly, the severance remedy preserves "truth in sentencing," a fundamental element of S.B. 2. Because offenders will continue to be sentenced to a specific prison term, all parties and the victim of the crime will know at the time of sentencing exactly what sanction the court is imposing on the defendant. Moreover, S.B. 2 established an entirely new framework for felony sentencing in Ohio, and the breadth of its reforms is wide. For example, the legislation recategorized numerous felonies, added various sentence-enhancing specifications, permitted courts to use residential and nonresidential sanctions in lieu of a prison term, required a definite term of imprisonment, and created the option of a life sentence without the possibility of parole. The overwhelming majority of those reforms survive today's constitutional decision.

{¶ 102} Severance also is the remedy that will best preserve the paramount goals of community safety and appropriate punishment and the major elements of our sentencing code. Removing presumptive terms and preserving the remainder of the sentencing provisions of the code will most effectively preserve the General Assembly's goal of truth in sentencing. However tempting it may be for this court to reconfigure the sentencing code to cause the least impact on our criminal-justice system, we must adhere to our traditional judicial role. Our remedy does not rewrite the statutes but leaves courts with full discretion to impose a prison term within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant without the mandated judicial findings that *Blakely* prohibits.

## Sentencing Rehearings

{¶ 103} The sentences of Foster, Quinones, and Adams were based on unconsti-

tutional statutes.[99]    When a sentence is deemed void, the ordinary course is to vacate that sentence and remand to the trial court for a new sentencing hearing. See, e.g., *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23 (where a sentence is void because it does not contain a statutorily mandated term, the proper remedy is to resentence the offender).   In fact, in the case of Quinones, the court of appeals, whose judgment we today affirm, vacated the sentence and remanded to the trial court for resentencing.

{¶ 104} These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion.   We do not order resentencing lightly.   Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court.   Ohio's felony-sentencing code must protect Sixth Amendment principles as they have been articulated.

{¶ 105} Under R.C. 2929.19 as it stands without (B)(2), the defendants are entitled to a new sentencing hearing, although the parties may stipulate to the sentencing court's acting on the record before it.   Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range.   If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively.   While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties.   *United States v. DiFrancesco* (1980), 449 U.S. 117, 134–136, 101 S.Ct. 426, 66 L.Ed.2d 328.

{¶ 106} As the Supreme Court mandated in *Booker,* we must apply this holding to all cases on direct review.   *Booker,* 543 U.S. at 268, 125 S.Ct. 738, 160 L.Ed.2d 621, quoting *Griffith v. Kentucky,* 479 U.S. at 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (" 'A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases * * * pending on direct review or not yet final' ").

## DISPOSITIONS

{¶ 107} In case No. 2004–1568 (Andrew Foster), the judgment of the Licking County Court of Appeals is reversed.   In case No. 2004–1771 (Jason Quinones), the judgment of the Cuyahoga County Court of Appeals is affirmed.   In case No. 2005–0735 (Robert Adams), the judgment of the Lake County Court of Appeals is

---

99. Horn's sentence as a major drug offender was based only on R.C. 2929.14(D)(3)(a).   It did not include an additional penalty under R.C. 2929.14(D)(3)(b), which has now been severed.   Therefore, her sentence is affirmed and does not require any further proceeding.

reversed. In case No. 2005–2156 (Jeannett Horn), the judgment of the Ottawa County Court of Appeals is affirmed. The *Foster, Quinones,* and *Adams* cases are remanded to the trial courts for resentencing in light of our remedial severance and interpretation of Ohio's felony-sentencing statutes.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK, J., concurs in paragraph seven of the syllabus and in judgment.

———————

Robert L. Becker, Licking County Prosecuting Attorney, and Kenneth W. Oswalt, Assistant Prosecuting Attorney, for appellee in case No. 2004–1568.

David H. Bodiker, Ohio Public Defender, and Theresa G. Haire, Assistant Public Defender, for appellant in case No. 2004–1568.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, and Diane Richards Brey and Franklin E. Crawford, Deputy Solicitors, urging affirmance for amicus curiae Ohio Attorney General in case No. 2004–1568.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor and Seth L. Gilbert, Assistant Prosecuting Attorneys, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association in case No. 2004–1568.

Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender; and Jason Macke, urging reversal for amici curiae Ohio Association of Criminal Defense Lawyers and Cuyahoga County Public Defender in case No. 2004–1568.

Jeffrey M. Gamso, urging reversal for amicus curiae American Civil Liberties Union of Ohio Foundation, Inc., in case No. 2004–1568.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Lisa Reitz Williamson and Jon W. Oebker, Assistant Prosecuting Attorneys, for appellant in case No. 2004–1771.

Michael T. Fisher, for appellee in case No. 2004–1771.

Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender; and Jason Macke, urging affirmance for amici curiae Cuyahoga County Public Defender and Ohio Association of Criminal Defense Lawyers in case No. 2004–1771.

John E. Wells Sr., urging affirmance on his own behalf in case No. 2004–1771.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, and Diane Richards Brey and Franklin E. Crawford, Deputy Solicitors, urging reversal for amicus curiae Ohio Attorney General in case No. 2004–1771.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor and Seth L. Gilbert, Assistant Prosecuting Attorneys, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association in case No. 2004–1771.

Charles E. Coulson, Lake County Prosecuting Attorney, and Alana A. Rezaee, Assistant Prosecuting Attorney, for appellee in case No. 2005–0735.

R. Paul LaPlante, Lake County Public Defender, and Vanessa R. Clapp, Supervising Attorney–Appellate Division, for appellant in case No. 2005–0735.

Lorrain R. Croy, Assistant Prosecuting Attorney, for appellee in case No. 2005–2156.

David H. Bodiker, Ohio Public Defender, and Charles B. Clovis, Assistant Public Defender, for appellant in case No. 2005–2156.