DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas that found appellant guilty of two counts of attempted murder and sentenced him to consecutive five-year prison terms. For the following reasons, the judgment of the trial court is affirmed as to appellant's conviction and reversed as to sentence only.
 {¶ 2} Appellant sets forth four assignments of error:
 {¶ 3} "I. Appellant was deprived of his constitutional right to a fair trial and due process of law due to the introduction of evidence of prior convictions of the appellant.
 {¶ 4} "II. Appellant was denied his constitutional right to the effective assistance of counsel due to the failure of his counsel to object to the introduction into evidence of prior convictions of the appellant and to object to the imposition upon appellant of a sentence which exceeded the minimum sentence and the imposition of consecutive sentences.
 {¶ 5} "III. The trial court erred in sentencing appellant to consecutive sentences without making required findings and providing the reasons for these findings as mandated by statute.
 {¶ 6} "IV. The trial court denied the appellant his state and federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence in sentencing the appellant to a term of imprisonment in excess of the minimum term of three years and in sentencing the appellant to consecutive sentences."
 {¶ 7} On January 6, 2005, appellant was indicted on two counts of attempted murder in violation of R.C. 2903.02(A) and2923.02. The charges arose from allegations that appellant attempted to kill himself, his wife and his five-year-old son on November 29, 2004, by poisoning them with carbon monoxide vented from the exhaust pipe of his van into their mobile home while they slept. Appellant initially entered a plea of not guilty by reason of insanity but, following a competency evaluation, changed his plea to not guilty. On August 15, 2005, appellant filed a motion in limine asking the court to prohibit the state from offering any evidence concerning prior convictions and an alleged "suicide letter." On September 13, 2005, the trial court ruled that evidence regarding the prior convictions and the related sentence appellant faced at the time of the incident were relevant to his motive and intent. The trial court stated it would provide a cautionary instruction to the jury regarding the evidence. The court further determined that the "suicide letter" was relevant evidence, subject to proper authentication.
 {¶ 8} The matter proceeded to trial and on September 16, 2005, the jury returned verdicts of guilty as to both counts. The trial court sentenced appellant to five years imprisonment on each count, to be served consecutively.
 {¶ 9} In his first assignment of error, appellant asserts he was denied due process and a fair trial because the trial court allowed the state to introduce evidence of his prior convictions. The record reflects that in 2002, appellant was charged with one count of pandering obscenity involving a minor and one count of illegal use of a minor in nudity-oriented material or performance. Appellant pled guilty and on November 5, 2004, was sentenced to five years community control and ordered to successfully complete the SEARCH program through the Northwest Community Corrections Center. Imposition of that sentence was stayed until November 29, 2004, the morning after the incident that gave rise to this action. On November 29, appellant was to report to the Norwest Community Corrections Center to begin serving a required period of incarceration prior to his entry into the SEARCH program. The record also reflects, however, that earlier in November, appellant was found to be ineligible for the program. The result would have led to his being resentenced on the original charge. The state's theory of this case was that appellant was so despondent about having to begin serving his sentence that he attempted to murder his wife and child and take his own life the night before he was scheduled to report to the program.
 {¶ 10} On August 15, 2005, appellant filed a motion in limine, requesting in part that the trial court exclude any evidence of his prior convictions and any testimony that he was due to report to the Northwest Community Corrections Center on November 29, 2004. In keeping with its theory of the case, the state responded that evidence of appellant's prior convictions was admissible under Evid.R. 404(B) and R.C. 2945.59 to show motive. The trial court denied appellant's motion, reasoning that evidence of the prior convictions and impending sentence was relevant to motive and intent and that appellant's state of mind was a critical issue in the case. The trial court further stated that any unfair prejudice at trial would be minimized by a cautionary instruction to the jury.
 {¶ 11} One of the key witnesses at trial was appellant's wife, Amanda Miller. Under direct examination, the prosecutor asked her about her relationship with appellant in September 2004. Amanda replied that they were under a lot of stress "because we knew that * * * he would have to go away soon." After asking a few other questions, the following exchange ensued:
 {¶ 12} "Q. And you said that Charles was going to be going away?
 {¶ 13} "A. Yes. He was going through sentencing for pandering obscenity involving a minor and a few other things to do with that. And he was supposed to be going away for six months.
 {¶ 14} "Q. And where was he supposed to be going for six months?
 {¶ 15} "A. At first it was supposed to be the SEARCH program. We weren't sure if he was qualified for that because of some of his medical conditions. So in the end we thought that he was going to jail for six months because he told me that he wasn't qualified for the SEARCH program and they weren't going to give him house arrest or something less and that he would have to go away for sure."
 {¶ 16} Defense counsel did not object to the testimony. Accordingly, our review of the alleged improper testimony is discretionary and limited to plain error only. Crim.R. 52(B) provides that "* * * plain errors or defects affecting substantial rights may be noticed although they are not brought to the attention of the trial court." However, this court has held that "* * * notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only in order to prevent a manifest miscarriage of justice. In order to prevail on a claim governed by the plain error standard, appellant must demonstrate that the outcome of his trial wouldclearly have been different but for the errors he alleges." (Citations omitted.) State v. Jones, 6th Dist. No. L-05-1101, 2006-Ohio 2351 at ¶ 72. (Emphasis added.)
 {¶ 17} In addition to the testimony quoted above, Amanda Miller testified at length as to appellant's actions in the days immediately prior to the attempted murder. Amanda testified that appellant was scared about being locked up and said he would rather see his son dead than with his mother, to whom appellant had never been married. She further testified that about a month before he was to go, he asked her if she would commit suicide with him. She testified as follows:
 {¶ 18} "A. * * * He would ask me if I would commit suicide with him. He said we could die in our sleep, it wouldn't hurt, we wouldn't have to be afraid. He said we could just go as a family."
 {¶ 19} "Q. Did he ever explain to you how that would be accomplished?
 {¶ 20} "A. With carbon monoxide.
 {¶ 21} "Q. Did he ever get specific with you about how to do that?
 {¶ 22} "A. He once mentioned one of the cars in our driveway. * * *"
 {¶ 23} Amanda also testified that one or two days before the incident, appellant asked her "* * * if I could watch one last DVD before I die, one last movie, what would it be?" Further, shortly before the incident, Amanda went to the store with appellant and he purchased an exhaust pipe for the van, some octane booster and a dryer vent. She testified that they had not been having problems with their dryer. She further testified that appellant parked their van within inches of the side of their trailer the night of the incident, with the van's exhaust pipe lined up with the dryer vent. According to Amanda, this was not where appellant had been in the habit of parking the van.
 {¶ 24} Amanda testified that appellant owned a "fog machine" which he used to set up on Halloween. A few days before November 29, appellant attached the fog machine to the trailer's ventilation system and told Amanda he was checking the system. She testified appellant was upset that the fog was not coming out sufficiently in the master bedroom. Amanda also identified a carbon monoxide detector which was found unplugged in a planter on top of one of the kitchen cabinets after the incident. Amanda testified that on the night of the incident she and appellant watched a movie. Appellant then told her she should take a sleeping pill because she was nervous about him leaving the next day. Amanda was hesitant but nevertheless took the pill.
 {¶ 25} On the morning of November 29, 2004, Amanda awoke with a headache. She walked into the master bathroom because she heard the shower running and found appellant lying with his upper body in the shower stall and his legs on the floor. When she asked appellant why the floor was wet, he did not respond immediately. He then began speaking very slowly and told her he was cold. He asked her to turn up the furnace. When she opened the bedroom door, she was "hit by a wall of very strong fumes" that smelled like car exhaust. Amanda ran back to the bedroom, grabbed appellant's son and went to a neighbor's house for help.
 {¶ 26} Darrell Haas, who lived across the street from appellant at the time of the incident, testified that about two days earlier he had noticed appellant's van parked within inches of the trailer, next to the skirting. He saw appellant drilling a hole in the skirting and saw that the van's exhaust pipe and the hole in the skirting were "almost identically lined up." Haas thought perhaps appellant was installing a dryer vent and wondered why appellant would place the vent in that spot. He recalled seeing appellant put in flexible duct which lined up with the exhaust pipe but he did not see the two pieces hooked up to each other.
 {¶ 27} Neighbor Harry Thompson testified that on the morning of November 29, 2004, Amanda brought Noah to his house. When he looked out, he saw the van parked very close to trailer. Thompson saw that an extension to the exhaust pipe was running into the skirting of the trailer. Another neighbor, Thomas Sniadecki, testified that at approximately 8:30 p.m. November 28, he noticed the van parked very close to the trailer and saw extension cords running from one of the windows into the van. The van was running. Early the following morning, he noticed the van still running and saw what appeared to be dryer vent pipe connected to the van exhaust pipe and running into the side of the trailer.
 {¶ 28} Wood County Sheriff's Deputy Greg Johns testified that he responded to a call to appellant's residence. When he walked through the front door he smelled automobile exhaust fumes. He stated that the smell permeated the entire trailer. The deputy further testified that he checked the area around the van and saw that the dryer vent did not have a covering. He saw that flex pipe was pushed through a hole that had been cut in the insulation underneath the trailer. This testimony was confirmed by the second officer who responded to the call.
 {¶ 29} This assignment of error must fail for two reasons. First, testimony as to appellant's prior offenses and his impending sentence was admissible pursuant to Evid.R. 404(B), which allows such evidence for proof of motive. The state in this case offered the testimony to show that appellant was motivated by his fear of the sentence he would have to begin serving the following day. Further, even if admission of the testimony had been plain error, we could not say that the outcome of the trial would have been different but for the evidence of his prior convictions. There simply was overwhelming evidence that appellant attempted to take the lives of his wife and son by asphyxiating them with exhaust from his van.
 {¶ 30} Thus, we find that appellant's first assignment of error is not well-taken.
 {¶ 31} In his second assignment of error, appellant asserts he was denied effective assistance of counsel. Appellant first argues that counsel was ineffective for failing to renew an objection to evidence of his prior bad acts at the time the testimony was presented. Because we found in our consideration of appellant's first assignment of error that it was not error for the trial court to allow the evidence, we cannot find that counsel was ineffective for failing to object. This argument is without merit.
 {¶ 32} Second, appellant argues that counsel should have objected to his two five-year sentences, which exceeded the minimum for a first-degree felony and were ordered to run consecutively. Appellant asserts that counsel should have argued for the minimum sentence, instead of requesting as he did that the court impose a sentence in the "lower range" with the terms served concurrently.
 {¶ 33} To prevail on a claim of ineffective assistance of counsel, appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v. Hamblin
(1988), 37 Ohio St.3d 153.
 {¶ 34} At sentencing, defense counsel asked the court to sentence appellant "from the lower end of the sentencing range based upon these crimes being based primarily on mental health issues." Counsel also stated: "I think there is a low chance of recidivism in this case so long as Mr. Miller receives and avails himself of certain mental health services that might be made available to him." Counsel then asked that the sentences be imposed concurrently.
 {¶ 35} There is no indication counsel's representation fell below an objective standard of reasonableness or that the court would have imposed minimum, concurrent sentences for two convictions of attempted murder if counsel had so requested. We find that counsel petitioned the court on appellant's behalf to the extent reasonable under the circumstances.
 {¶ 36} Based on the foregoing, appellant's second assignment of error is not well-taken.
 {¶ 37} Appellant raises two sentencing issues in his third and fourth assignments of error. They will be considered together. In his third assignment of error, appellant argues that the trial court erred because it did not comply with R.C.2929.14(E) and make required findings for the imposition of consecutive sentences. In his fourth assignment of error, appellant argues that the trial court did not comply with R.C.2929.14(B) and make the findings required for imposition of more than the minimum sentence.
 {¶ 38} At appellant's sentencing hearing, the trial court found in part as follows:
 {¶ 39} "[T]he minimum sentence would not adequately protect the public from future crime by the offender. Also, that this is one of the more serious forms of the offense. I am going to also find that the consecutive sentence is necessary to protect the public from future crime and to punish the offender * * * and that no single term would adequately reflect the seriousness of the offenses."
 {¶ 40} The sentencing judgment states in relevant part:
 {¶ 41} "In determining a sentence the Court considered imposition of the minimum prison term. Based on the above facts, the Court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct and would not adequately protect the public from future crime by the offender or others.
 {¶ 42} "The Court further finds, as to both offenses, that these particular offenses constitute one of the more serious forms of offenses due to the severity and nature of the offenses.
 {¶ 43} "The Court further finds that the Defendant poses the greatest likelihood of committing future crimes in view of the previous findings and, again that the use of community control sanctions would not adequately punish the offender nor protect the public from multiple harm by multiple offenses.
 {¶ 44} "* * *
 {¶ 45} "The Court finds that consecutive sentences are necessary to punish the offender and to protect the public from future crime. The Court further finds that consecutive sentences are not disproportionate to the seriousness of the offender's conduct in this case, and the danger that the offender poses to the public. The Court further finds that harm caused by the multiple offenses was so great or unusual that no single prison term would adequately reflect the seriousness of the offenses. Further, the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime."
 {¶ 46} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held that R.C. 2929.14(B) and (E) violate the Sixth Amendment to the United States Constitution, pursuant to Blakely v. Washington (2004), 542 U.S. 296, and Apprendi v.New Jersey (2000), 530 U.S. 466, and ordered that those statutory sections be severed from the Ohio Revised Code. With respect to cases pending on direct review, where a trial court relied on any of the unconstitutional statutes when imposing a sentence, the sentence is deemed void, must be vacated, and the matter must be remanded to the trial court for a new sentencing hearing. Foster at ¶ 103 and ¶ 104.
 {¶ 47} In this case, while the trial court did not expressly cite R.C. 2929.14(B) and (E) at the sentencing hearing or in its judgment entry of sentencing, the reasons given for the sentences clearly were based on the sections deemed unconstitutional byFoster. Much of the trial court's language, quoted above, is identical to that found in the former R.C. 2929.14(B) regarding greater-than-minimum sentences and the former R.C. 2929.14(E), which addressed the imposition of consecutive sentences.
 {¶ 48} Upon consideration of the foregoing, this court finds that appellant's sentences were based on the severed statutes and, accordingly, appellant's third and fourth assignments of error are well-taken.
 {¶ 49} On consideration whereof, the judgment of the Wood County Court of Common Pleas is reversed as to sentence only. Appellant's sentence is vacated and this matter is remanded to the trial court for a new sentencing hearing pursuant to Statev. Foster, supra. Appellee and appellant are ordered to each pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
Judgment reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Singer, P.J. Parish, J . Skow, J. Concur.