OPINION
{¶ 1} Appellant, George A. Nicol, appeals his sentence following his guilty plea to fourteen counts of rape against his adopted daughter and six counts of rape against his natural daughter, both of whom were minors at the time. At issue is whether appellant is entitled to a reversal and remand for resentencing pursuant to State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} Appellant's sexual abuse of his daughters first came to light when Lisa Nelson, who had been appointed as guardian ad litem for the children, came to appellant's residence to investigate an incident of alleged child endangerment with respect to one of appellant's children. At that time two of the children reported sexual abuse at the hands of their father. Appellant's adopted child, born July 3, 1986, was ten years old when appellant began abusing her. Appellant's natural child, born January 24, 1992, was five years old when appellant began molesting her. After interviewing the children, Ms. Nelson reported the matter to the Child Services Bureau and local police. An officer assigned to the case interviewed appellant, who denied that anything had ever happened. He said that perhaps the children had seen him improperly clothed at times, but that was all that had ever happened.
 {¶ 3} Investigation by police revealed that appellant had repeatedly raped his daughters between 1997 and 2000. Following investigation by the police, appellant was charged in a 78-count indictment with 33 counts of rape, felonies of the first degree, in violation of R.C.2907.02, against his adopted daughter, who was less than 13 years old, between March 1997 and June 2000 (Counts 1-33); 33 counts of sexual battery, felonies of the third degree, in violation of R.C. 2907.03, against his adopted daughter during the same time period (Counts 40-72); six counts of rape, felonies of the first degree, in violation of R.C.2907.02, against his natural daughter, who was less than 13 years old, between June 1997 and June 2000 (Counts 34 and 39) and six counts of sexual battery, felonies of the third degree, in violation of R.C.2907.03, against his natural daughter during the same time period (Counts 73-78). *Page 3 
 {¶ 4} Pursuant to a negotiated plea bargain, appellant pleaded guilty to fourteen counts of rape (Counts one through fourteen) against his adopted daughter and six counts of rape (Counts 34 through 39) against his natural daughter.
 {¶ 5} The indictment and bill of particulars alleged that, with respect to counts one through 14, appellant raped his adopted daughter between March 1997 and April 1998, by penetrating her vagina with his penis. These offenses took place at the family residence at 719 Harbor St., Conneaut, Ohio. Counts 34 through 39 alleged that appellant raped his natural daughter between June 1997 and June 2000, by penetrating her mouth and vagina with his penis at the family residence.
 {¶ 6} Following appellant's guilty plea, the trial court found appellant guilty of rape under counts one through 14 and guilty of rape under counts 34 through 39. Pursuant to the plea bargain, the court dismissed counts 15 through 33 and counts 40 through 78.
 {¶ 7} The case proceeded to sentencing on August 29, 2001. The trial court had ordered a presentence investigation and a sexual offender examination to be conducted by the Forensic Psychiatric Center of District Eleven, Inc. Clinical psychologist Mary Jane Niebauer, Ph.D., prepared a sexual predator evaluation and report concerning appellant. Counsel for appellant and the state stipulated that Dr. Niebauer's report would be admitted into the evidence.
 {¶ 8} The presentence report indicated that appellant showed no remorse for his actions. He blamed the rapes on stress at work, his marital problems, and his high blood pressure. The report included a detailed description by appellant's natural daughter of the sexual acts appellant forced her to endure. His adopted daughter *Page 4 
described how appellant would hold her down while forcing her to submit to sexual acts by putting a pillow over her head when she began to scream. On one occasion she locked her bedroom door to keep appellant out, but he broke the lock; forced his way into the room; and raped her. The report also indicated that appellant blames the victims for the rapes.
 {¶ 9} In the victim impact statement of appellant's natural daughter, she wrote:
 {¶ 10} "My dad began touching me when I was four years old. * * * I'm scared to talk in front of my father because he made me promise never to tell anyone. It was wrong what he did to me. It made me very sad and made me feel bad for myself. I had stomachaches all the time and nightmares, too. I was scared to go to bed at night because I got fed up with him touching me. My babysitter was only twelve years old. He would even tell her she was sexy. He went after my friend, too, and he wouldn't stop. I was angry and mad at him all the time. * * * I was so embarrassed and I felt nervous."
 {¶ 11} Appellant's adopted daughter wrote in her victim impact statement:
 {¶ 12} "Today I'm having my mom read this for me because I'm scared to death of my father George, and I can't stand the fact that he actually did this to me, my mom, and my sister. He forced my sister and me to have sex * * *. [W]hen he started abusing me, I was only six, and it happened almost everyday until I told Lisa Nelson and told Officer Collette about our secret. Everyday for seven years he'd come into my room and told me I had to close my eyes. If I didn't, he'd hold a pillow over my face while he did it to me. I felt like I couldn't breath. He told me he'd kill me if I ever told anyone. He made me take pregnancy tests about every other month because he never used *Page 5 
protection. I even tried to run away from home because I had no safe place to go. He'd come to my room night after night. * * * I can't find words strong enough to explain how horrible this was for me. I'll live with the memories all my life. * * *"
 {¶ 13} The trial court noted that appellant's adopted daughter has suffered serious psychological harm as a result of appellant raping her. She is currently receiving psychological treatment, and has been diagnosed with major depressive disorder. She has attempted suicide as a result of being raped by appellant. He noted that without extensive counseling, appellant's conduct will likely affect these children for the rest of their lives. The court noted that appellant should have been the children's protector and instead he violated his position of trust and victimized his own children.
 {¶ 14} The court noted that the Forensic Psychiatric Center of Northeast Ohio diagnosed him as a pedophile, and, based upon the recommendation of Dr. Niebauer, the court designated appellant as a sexually-oriented offender.
 {¶ 15} The court sentenced appellant on counts one through 14 regarding the rapes he committed against his adopted daughter to nine years on each count, each to run concurrently. On counts 34 through 39, which alleged rape against appellant's natural daughter, the court sentenced appellant to seven years on each count, each to run concurrently. The court ordered that the sentences on counts one through 14 would be served consecutively to the sentences imposed on counts 34 through 39, for a total of 16 years in prison.
 {¶ 16} Appellant filed a notice of appeal pro se on October 30, 2001 from the court's final judgment, dated August 30, 2001. This court dismissed the appeal on *Page 6 
November 26, 2001 because it had not been filed within the thirty day limit set forth at App.R. 4(A).
 {¶ 17} Five years later, on November 9, 2006, appellant filed a motion to allow a delayed appeal, pursuant to App.R. 5(A), arguing that a nunc pro tunc order entered by the trial court on September 18, 2001, actually resulted in his first appeal being timely filed. Appellant argued he was unaware of that nunc pro tunc entry at the time. Appellant further argued that he had valid errors to assert on appeal and that his counsel improperly refused to file an appeal on his behalf. This court granted appellant's motion to allow a delayed appeal.
 {¶ 18} Appellant now appeals the sentence of the trial court. For his sole assignment of error, appellant asserts:
 {¶ 19} "THE SENTENCE IMPOSED IN THIS CASE, IMPOSED UPON A PERSON WITHOUT A PRIOR PRISON SENTENCE SERVED PRIOR TO THE ACT FORMING THE BASIS OF THE CONVICTION, WAS IMPOSED IN VIOLATION OF THE UNITED STATES CONSTITUTION, AS THE STATUTORY FINDINGS TO JUSTIFY THAT ENHANCEMENT ABOVE STATUTORY MAXIMUM, WERE NOT SUBJECTED TO DUE PROCESS PROTECTIONS, INCLUDING THE RIGHTS TO PRESENTMENT TO A GRAND JURY, PROOF BEYOND A REASONABLE DOUBT, AND TRIAL BY JURY, AMONG OTHERS, AS REQUIRED PERAPPRENDI AND BLAKELY.
 {¶ 20} Appellant asks this court to review his sentence based upon the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. In *Page 7 Foster, the Court held that Ohio's sentencing statute was unconstitutional to the extent certain sections required judicial fact finding and severed such sections. Id. at ¶ 83.
 {¶ 21} Appellant argues that he should not have been sentenced to more than the minimum and to consecutive sentences because the statute in effect at the time of his crimes created a rebuttable presumption for first offenders of minimum and non-consecutive sentencing. He argues, "As this case is now in the status of a direct appeal by virtue of this Court's decision granting his leave to reopen the appeal, the same remedy must be applied in this case." We do not agree.
 {¶ 22} As appellant concedes, the Court in Foster held that the only cases to be remanded for resentencing were those cases that were pending on direct review. The Court held: "These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. Foster at ¶ 104. The Court thus did not apply its holding to future cases resulting from delayed appeals.
 {¶ 23} Foster was decided on February 27, 2006. In the case sub judice, the trial court sentenced appellant on August 29, 2001, more than four years prior to the announcement of the Foster decision. Consequently, contrary to appellant's argument, his case was not pending on direct review at the time Foster was decided. The filing of appellant's delayed appeal does not change the fact that his conviction and sentence had become final long before Foster was decided. This court has previously held that a "[d]elayed appeal is not the same as direct appeal." State v. Silsby, 11th Dist. No. 2006-G-2725, 2007-Ohio-2308, at ¶ 14, citing State v. Lewis, 10th Dist. No. 06AP-327, 2006-Ohio-2752, at ¶ 10. As a result, "[b]ecause appellant's case was final before *Page 8 
Foster was decided, Foster cannot be a basis to vacate the judgment of the trial court." Id.
 {¶ 24} Further, even if appellant's sentence could be reviewed underFoster, appellant was not per se entitled to the minimum sentence, as he argues. "Foster did not hold that a defendant is entitled to receive the shortest sentence authorized under Ohio law." Lewis at ¶ 7. Rather, "post-Foster, a sentencing court is free to impose any sentence from the statutory range of punishment. The court is not required to impose the shortest authorized sentence." Id.
 {¶ 25} Because appellant's case was not pending on direct review at the time Foster was decided, Foster does not apply to this case and, contrary to appellant's argument, reversal and remand is not required.
 {¶ 26} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.
 MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur. *Page 1