OPINION
{¶ 1} Appellant Nathaniel C. Blacker appeals his conviction and sentence entered in the Guernsey County Court of Common Pleas on one count of aggravated robbery.
 {¶ 2} Appellee is State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On December 12, 2004, appellant was indicted by the Guernsey County Grand Jury on two counts of Aggravated Robbery, in violation of Revised Code Section 2911.01(A)(1). Count One of the Indictment concerned the Secrest Carryout. Count Two of the indictment concerned Plus One Pizza.
 {¶ 4} On February 9, 2005, appellant filed a Suggestion of Incompetence. An evidentiary hearing was held on appellant's Suggestion of Incompetence. Appellant was ordered to be evaluated for competency to stand trial. On March 18, 2005, a hearing was held upon the competency report. Appellant was found to be incompetent to stand trial, but he could be restored to competency. At that hearing, the state's motion for a second competency evaluation was granted. Appellant was ordered to undergo treatment to restore competency on May 11, 2005. On August 9, 2005, the court found appellant competent to stand trial, based on a report that appellant's competency had been restored.
 {¶ 5} On November 18, 2004, a man wearing a black shirt and black hat and armed with a butcher knife robbed the Secrest Carryout in Cambridge, Ohio. The State presented testimony from Donna Cobb, the victim of said robbery. Ms. Cobb testified that she had just begun her shift on November 18, 2004, when a person dressed in all *Page 3 
black and wearing a black baseball cap walked in through the front door and pulled a knife. (T. at 124). Ms. Cobb testified that the robber was a skinny, white male who had facial hair and a ponytail stuffed under his cap. (Id.). Ms. Cobb recalled that the robber pulled a knife out from behind his back and ordered her to open the register. (T. at 121). On cross-examination, Ms. Cobb admitted that in a taped statement to the police immediately after the robbery occurred. She stated that the robber was 5'6 or 57" inches tall and appeared to be in his 30s. (T. at 142). Mr. Blacker was 25 years old at the time of his trial and is 6'1" inches tall. (T. at 354, 363). Ms. Cobb told Officer LePage that Mr. Blacker was not the robber in a show-up at the market only one hour after the robbery occurred. (T. at 145). On cross examination, Ms. Cobb testified that her first response to officers, an hour after the robbery, was that the appellant was not the robber, because he was not wearing black clothes. (T. at 145). Under oath, Ms. Cobb identified appellant as the man who robbed her. (T. at 124).
 {¶ 6} Jessica Webb testified that Ms. Cobb came out of Secrest Carryout, saying that she had just been robbed. Ms. Cobb gave her the description of the person who had just robbed the store. Ms. Webb then got into her car and went off to find a person matching that description. Ms. Webb testified further that she saw someone who matched the robber's description get into a blue Dynasty-looking car, which was being driven by a woman. (T. at 153-157). Stephanie Morris also testified at trial. On the day of the robbery, she saw a little blue car pull up in front of her neighbor's home, and she saw the passenger get out of the car with something in his arms. Ms. Morris also testified that she saw Melissa Bowman get out of the driver's side of the car and go into the house. (T. at 183-189). On cross examination, Ms. Morris testified that she did not *Page 4 
remember at the time she gave her statement to police that the passenger was wearing black pants, but that she did remember that he had a blond ponytail. (T. at 192).
 {¶ 7} Patrolman Greg Clark was on duty when he heard the description of the Secrest robbery over the radio. (T. at 230). While driving around, Clark saw a vehicle that matched the description given. (T. at 233). The vehicle was parked in front of Steve Rubicam's house. (T. at 236). After backup arrived, the officers approached the house and obtained consent to search from Mr. Rubicam. (T. at 240). Officers found a bag of cash in the sleeve of a coat hanging in Mr. Rubicam's closet. (T. at 333). However, no knives matching Cobb's description were ever found. (T. at 335). A black baseball cap and a black shirt were found in Melissa Bowman's car, which was parked outside of Mr. Rubicam's house. (T. at 336). Mr. Blacker was arrested when he emerged from the garage. (T. at 362).
 {¶ 8} Steven Rubicam, the owner of the home in which appellant and Melissa Bowman were arrested following the robbery testified that appellant seemed stressed and hyper, and that he came into the house with a brown paper bag with money in it. (T. at 205).
 {¶ 9} Melissa Bowman also testified as to the robbery of Secrest Carryout. In her testimony, she stated that on November 18, 2004, her boyfriend, appellant, had talked about robbing Secrest, and that he wanted her to drive him to the carryout and drop him off so he could rob it. (T. at 257). She further testified that she dropped him off at Secrest, and that he had a kitchen butcher knife on him when he went into the store. (T. at 261). Ms. Bowman also stated that the original plan was that he was to jump right *Page 5 
back into her car, but he ran past it, and that she had to drive down the alley to catch up with him and that is when he jumped into her car. (Tr. at 262-263).
 {¶ 10} On August 25, 2005, the jury returned a verdict of "guilty" as to Count One of the Indictment, alleging robbery of the Secrest Carryout (hereinafter "Secrest robbery") and a verdict of "not guilty" as to Count Two of the Indictment, alleging robbery of Plus One Pizza (hereinafter "Plus One robbery"). Sentencing took place on September 19, 2005, and appellant was ordered to serve a stated term of seven years in prison.
 {¶ 11} On October 19, 2005, Appellant filed a notice of appeal to the original conviction and sentence. On October 2, 2006, the Fifth District Court of Appeals affirmed appellant's conviction, but reversed his sentence and remanded it to the trial court for a new sentencing hearing consistent with the Supreme Court of Ohio's decision in State v.Foster (2006), 109 Ohio St. 3d.
 {¶ 12} On December 22, 2006, the trial court re-sentenced appellant, pursuant to the decision of the Court of Appeals. At the re-sentencing hearing, appellant was again sentenced to a seven-year prison term, and ordered to pay restitution in the amount of eighty (80) dollars. The trial court further stated that appellant would be subject to post-release control for a mandatory period of five years.
 {¶ 13} It is from this re-sentencing decision that appellant now appeals, assigning the following error for review:
 ASSIGNMENT OF ERROR {¶ 14} "I. THE TRIAL COURT ERRED BY IMPOSING AN ILLEGAL SENTENCE. DECEMBER 26, 2006 JUDGMENT ENTRY OF SENTENCE." *Page 6 
 I. {¶ 15} In his sole assignment of error, appellant challenges his re-sentencing by the trial court claiming that Ohio's sentencing scheme remains unconstitutional despite the holding in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, as the application of Foster violates appellant's rights under the due process and ex post facto clauses of the United States and Ohio Constitutions. We disagree.
 {¶ 16} The Ohio Supreme Court in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, concluded trial courts have full discretion to impose a prison sentence within the statutory range, and are not required to make findings or give their reasons for maximum, consecutive, or greater than the minimum sentences.
 {¶ 17} As stated above, the crux of appellant's present argument is that the Foster remedy, i.e., his re-sentencing upon remand, violates his constitutional due process rights and constitutional protection from ex post facto laws.
 {¶ 18} This Court exhaustively addressed the same issue in State v.Paynter, Muskingum App. No. CT2006-0034, 2006-Ohio-5542. *Page 7 
 {¶ 19} Based upon our holding in Paynter, we find the sentence imposed in the case sub judice did not violate appellant's rights under the due process or ex post facto clauses of the United States Constitution.
 {¶ 20} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.
 Wise, J. Farmer, P. J., and Delaney, J., concur. *Page 8 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the court of Common Pleas of Guernsey County, Ohio, is affirmed.
 Costs assessed to appellant. *Page 1