The STATE of Ohio, Appellant,

v.

TRIPLETT, Appellee.

[Cite as *State v. Triplett,* 176 Ohio App.3d 603, 2008-Ohio-397.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 07AP–416 and 07AP–417.

Decided Feb. 5, 2008.

Ron O'Brien, Franklin County Prosecuting Attorney, and Richard A. Termuhlen II, Assistant Prosecuting Attorney, for appellant.

Yeura R. Venters, Public Defender, and John W. Keeling, for appellee.

FRENCH, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from the judgments of the Franklin County Court of Common Pleas, whereby the trial court granted judicial release to defendant-appellee, Olejuwon R. Triplett.

{¶ 2} In case No. 07AP–417, appellee pleaded guilty to theft, a fourth-degree felony, in violation of R.C. 2913.02, in regards to the theft of Elizabeth Brinch's vehicle. In case No. 07AP–416, appellee pleaded guilty to (1) robbery, a second-degree felony, in violation of R.C. 2911.02, (2) receiving stolen property, a fourth-degree felony, in violation of R.C. 2913.51, and (3) receiving stolen property, a fifth-degree felony, in violation of R.C. 2913.51. The charges of robbery and fourth-degree felony receiving stolen property pertained to appellee's involvement in the theft of Jennifer McGeehan's vehicle. The fifth-degree receiving-stolen-property charge involved appellee subsequently driving McGeehan's vehicle with a license plate stolen from Kimberly Flowers.

{¶ 3} The crime against McGeehan involved someone taking her vehicle after putting a gun to her chest. At appellee's guilty plea hearing, McGeehan admitted to the trial court that she could not positively identify appellee as the individual who pointed the gun at her. Nonetheless, appellee had previously admitted to police his involvement in the theft of McGeehan's vehicle. Specifically, appellee stated that his friend Travonne Moore wanted to steal a vehicle on October 12, 2005. According to appellee, on that date, he drove Moore to a parking lot and watched Moore hold a gun to McGeehan's chest and steal her vehicle.

{¶ 4} The trial court held a sentencing hearing on March 13, 2006. McGeehan spoke at the sentencing hearing and stated that "[f]or several months following" the October 12, 2005 theft:

I was unable to live by myself. I was unable to sleep without medication. I had nightmares. I had to seek therapy. My work suffered, my homework suffered. I didn't want to return to [the Ohio State University campus, where

the theft took place]. I still can't return to the place on campus where this happened.

Now, even though maybe I'm not scared all the time, I think about it the first thing when I wake up in the morning. I think about it at least twenty times a day. Any time I get into my car, any time I leave my car, * * * I think about it every day.

* * *

The other thing that I think of always is that I could have died that day, because while I was leaving my car and the man told me to walk away after I gave him my keys, the only thing in my head, he's going to shoot me in the back of my head. I'm never going to see my parents again. That didn't go away. No matter how much therapy you have, no matter how much support you have, that doesn't go away.

* * * I know [appellee] said that he wasn't the one that did it, but he did say he watched it happen. He just, it was going to happen, so if he had the gun or not is of little consequence to me. If he didn't do it, he nevertheless knew what was going to happen and he watched it happen.

{¶ 5} Thereafter, in case No. 07AP–416, the trial court sentenced appellee to concurrent sentences of four years' imprisonment on the robbery, 18 months' imprisonment on the fourth-degree felony receiving stolen property, and 12 months' imprisonment for the fifth-degree felony receiving stolen property. In case No. 07AP–417, the trial court sentenced appellee to 18 months' imprisonment for the theft. The court ordered appellee to serve the sentences in case Nos. 07AP–416 and 07AP–417 concurrently. At the sentencing hearing, the trial court indicated that it would later entertain motions for judicial release after appellant served one year in prison.

{¶ 6} On January 30, 2007, appellee filed a motion for judicial release in case No. 07AP–416, but not in case No. 07AP–417. In the motion, appellee indicated that, while incarcerated, appellee successfully completed a variety of programs, including classes on anger management and conflict resolution.

{¶ 7} On March 19, 2007, the trial court held a hearing on the judicial-release motion. At the hearing, appellant read a letter from McGeehan. In the letter, McGeehan stated:

I am currently not able to live alone or even stay by myself for a single night. I take antidepressants and anti-anxiety medication and see a therapist. I was once an independent person, and now I am frightened most of the time. I used to have bouts of insomnia that would prevent me from sleeping for days. At one point last year I had thought about taking my own life because I couldn't deal with being scared all the time. Although I have gotten help with these

feelings, not a day goes by that I don't think about what happened and wonder what would happen to me next. I would give anything to feel normal again. I will have to deal with this the rest of my life.

{¶ 8} During the hearing, the trial court acknowledged that appellee committed several infractions while incarcerated; one infraction involved appellee breaking a window. Nonetheless, the trial court granted the motion for judicial release. Thus, the trial court suspended appellee's prison sentence and imposed community-control sanctions, which included appellee entering into a community-based correctional facility ("CBCF") and five years of intensive supervision. The trial court journalized its order on March 19, 2007.

{¶ 9} On March 20, 2007, appellee filed a motion for judicial release in case No. 07AP–417. Appellee did not file such a motion with the previous motion in case No. 07AP–416 because counsel incorrectly thought that appellee had served his sentence in case No. 07AP–417. Appellant objected to the motion.

{¶ 10} On March 20, 2007, the trial court met with the parties to discuss the situation surrounding the new judicial-release motion. The trial court recognized that appellant requested "formal findings of fact" regarding appellee's first motion for judicial release. The trial court also indicated that appellant would have time to respond to appellee's second motion for judicial release because, "[t]echnically, it's not been ruled upon yet." In so noting, the trial court stated:

I know I'm going to get some argument about more severe factors * * *, but we got a record which consisted of a juvenile record of a disorderly conduct which looks like [it was resolved through an informal conference] which technically shouldn't even be there. There is a multitude of factors that I'm going to weigh through and make my findings * * *.

We'll deal with that in formal findings pursuant to R.C. 2929.20(H)(1)(a) and (b).

Ultimately, the trial court set a March 30, 2007 hearing date.

{¶ 11} At the March 30, 2007 hearing, appellant and the trial court had the following exchange:

THE COURT: I have findings on the record already in existence [in regards to judicial release]. That doesn't mean I can't change my mind. We have a logistics issue, one. Two, I gave you an opportunity to speak. So go ahead and address the issue accordingly.

MR. KIRSCHMAN: That's why I wanted to make sure, when I was asked the last time, to know the exact status in regard to the * * * robbery, that that is not a final appealable order at that point. Is that correct?

THE COURT: That's true.

MR. KIRSCHMAN: Okay. And I do think in addressing the entirety of the situation, since these two cases are so bound together, I want to address everything and that's why the State did file its motion in regard to Case Numbers [07AP–417] and [07AP–416] because the defense failed to file a complete motion for judicial release.

{¶ 12} Before announcing a decision, the trial court stated that in considering judicial release, *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, dictates that the court does not have to make findings on the record. Nonetheless, the trial court stated the following:

Pursuant to [R.C.] 2929.20(H), I'm going to make the same findings I made the other day, but I want to elaborate on a few. The first is he did complete all the programming that I can see was available to him in the short period of time that he was in there, granted he had a few violations that concern me, but more anger management issues. I feel that I've adequately punished him with the prison time involved, now it's time to rehabilitate him and that's why my plan of going through [community-based correctional facility]—since he's already spent 18 months in prison, going through CBCF, having him deal with some issues relative to his attitude and see what we can do with that. I also want the ability to get a more detailed evaluation than what the institution can give me relative to any mental health issues that may be in existence.

To demean it or not, if I remember correctly from the facts that I had, there were some serious proof issues of you getting him to the event of the robbery. You might have been able to hook him up as an accessory. The only thing you had that I saw was clear was RSP on the auto. There were those issues. I was very clear about what my intentions were when I started this case and I've been consistent throughout that time.

I find under [R.C. 2929.20](H)(1) that I do not demean the nature of the offense due to the incarceration that existed, the possibility of correction that can occur.

In weighing the factors of likelihood of recidivism, if he continues on his current path, I feel even based on the decade of sentencing formally issued by the Ohio Criminal Sentencing Commission yesterday by Chief Justice Moyer and some of the concepts in that, that we need to address certain issues he has. I feel the only way we can adequately do it is through the current sentence. I feel, therefore, it helps the community and does not demean the offense at all. As to the second condition, based upon the factors that I've heard through this, I feel I've met the standard to that. And based upon my previous findings from last week, I will maintain those under that case and consideration and, therefore, I'll be granting judicial release on both cases.

\* \* \*

\* \* \* I do acknowledge the fact that I think [appellee's] got an impulsive disorder problem somewhere that may be treatable to a positive result.

{¶ 13} On April 24, 2007, the trial court journalized its decision to grant appellee judicial release in case No. 07AP–417, and the trial court issued a "corrected" entry reaffirming its decision to grant appellee judicial release in case No. 07AP–416. Appellant appeals, raising two assignments of error:

First Assignment of Error

Upon consideration of motions for judicial release for offenders convicted of a felony of the first or second degree and lesser felony offenses, the court is bound to make findings under R.C. 2929.20(H) as to all cases that comprise the stated prison term.

Second Assignment of Error

A court that grants judicial release to an inmate incarcerated for a felony of the first or second degree must list all the seriousness and recidivism factors that were presented at the hearing.

{¶ 14} In its two assignments of error, appellant contends that the trial court failed to make the requisite findings when it granted appellee judicial release. We agree.

{¶ 15} Because the trial court's grant of judicial release affects appellee's sentence for his second-degree felony, R.C. 2929.20(H) applies. That provision states:

(H)(1) A court shall not grant a judicial release under this section to an eligible offender who is imprisoned for a felony of the first or second degree \* \* \* unless the court, with reference to factors under section 2929.12 of the Revised Code, finds both of the following:

(a) That a sanction other than a prison term would adequately punish the offender and protect the public from future criminal violations by the eligible offender because the applicable factors indicating a lesser likelihood of recidivism outweigh the applicable factors indicating a greater likelihood of recidivism;

(b) That a sanction other than a prison term would not demean the seriousness of the offense because factors indicating that the eligible offender's conduct in committing the offense was less serious than conduct normally constituting the offense outweigh factors indicating that the eligible offender's conduct was more serious than conduct normally constituting the offense.

(2) A court that grants a judicial release to an eligible offender under division (H)(1) of this section shall specify on the record both findings required in that division and also shall list all the factors described in that division that were presented at the hearing.

{¶ 16} Contrary to the trial court's statements, the findings requirements under R.C. 2929.20(H) remain effective after *Foster*, which severed other portions of Ohio's felony-sentencing law. See *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶ 23, 27. Thus, under R.C. 2953.08(G)(1):

> If the sentencing court was required to make the findings required by * * * division (H) of section 2929.20 of the Revised Code * * *, and if the sentencing court failed to state the required findings on the record, the court hearing an appeal * * * shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings.

See also *Mathis* at ¶ 35 (construing R.C. 2953.08[G][1] and stating that a "remand under R.C. 2953.08[G][1] is possible * * * to allow the trial court to add missing findings explaining * * * why it granted a judicial release").

{¶ 17} In *State v. Hunt*, Franklin App. No. 04AP–1177, 2005-Ohio-3144, 2005 WL 1476887, we reversed a trial court's decision to grant judicial release for a defendant who was originally sentenced to prison on two first-degree felonies. When the trial court granted judicial release, it indicated:

> The Court finds that a sanction other than a prison term would adequately punish the offender and protect the public from future criminal violations because the applicable factors indicating a greater likelihood of recidivism.

Id. at ¶ 6.

{¶ 18} In reversing the trial court's decision to grant judicial release, we stated:

> A review of the record shows that the trial court failed to make the requisite findings. Not only does the language of the October 5, 2004 entry not meet the requirements of R.C. 2929.20(H)(1)(a), nowhere in the record does the trial court address any of the R.C. 2929.12 factors. R.C. 2929.20 explicitly requires that when granting judicial release to an eligible offender imprisoned for a felony of the first degree, the court shall specify both findings required by R.C. 2929.20(H)(1) "*and* also shall list all the factors described in that division that were presented at the hearing." R.C. 2929.20(H)(2). (Emphasis added.) This court has held that under such circumstances a case must be reversed and remanded to allow the trial court to make the necessary findings if supported by the facts of the case. *State v. Peoples* (2003), 151 Ohio App.3d 446, 784 N.E.2d 713 ¶ 35, * * * citing *State v. Riley* (Oct. 31, 2000), Franklin App. No. 00AP–599 [2000 WL 1617854]. See, also, *State v. Moon* (May 3, 2000), Lorain App. No. 98CA007201 [2000 WL 530364]; *State v. Edwards* (2005), Marion App. No. 9–04–67, 2005-Ohio-2246 [2005 WL 1077048]. In the absence of such

findings, this court is unable to determine whether or not the trial court erred in granting appellee's motion for judicial release.

*Hunt* at ¶ 13.

{¶ 19} Here, as in *Hunt,* the trial court did not make the required findings under R.C. 2929.20(H)(1). Specifically, although the trial court stated that it "adequately punished" appellee, the trial court did not indicate, pursuant to R.C. 2929.20(H)(1)(a), that "a sanction other than a prison term would adequately punish the offender and protect the public from future criminal violations by the eligible offender because the applicable factors indicating a lesser likelihood of recidivism outweigh the applicable factors indicating a greater likelihood of recidivism." Likewise, although the trial court stated that judicial release would not "demean the nature of the offense," the trial court did not indicate, pursuant to R.C. 2929.20(H)(1)(b), that "a sanction other than a prison term would not demean the seriousness of the offense because factors indicating that the eligible offender's conduct in committing the offense was less serious than conduct normally constituting the offense outweigh factors indicating that the eligible offender's conduct was more serious than conduct normally constituting the offense."

{¶ 20} Moreover, as in *Hunt,* the trial court did not adhere to R.C. 2929.20(H)(2), which requires the court to list "all the factors described in [R.C. 2929.12]." As an example, R.C. 2929.12(B)(2) identifies a victim's psychological harm as a factor making an offender's conduct "more serious than conduct normally constituting the offense." Yet, here, the trial court did not mention the psychological harm McGeehan suffered as a result of the second-degree robbery in which appellee was involved. Nor did the trial court mention how, in accordance with R.C. 2929.12(D) and (E), appellee's prior juvenile record factors into whether appellee is or is not likely to commit future crimes.

{¶ 21} Accordingly, we conclude that the trial court failed to make the requisite findings under R.C. 2929.20(H) when it granted appellee judicial release. In so concluding, we note that appellee claims that appellant forfeited all but plain error as to the trial court's decision to grant judicial release. See *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, at ¶ 23. However, we reject appellee's contentions, recognizing that appellant properly preserved the issues raised on appeal by notifying the trial court of the need to make "formal findings" before granting judicial release.

{¶ 22} Lastly, we recognize that the trial court spent a significant amount of time and effort considering whether to grant appellee judicial release, and the trial court gave diligent and scrupulous thought as to whether judicial release would be appropriate for appellee. Our decision in this matter should not be

construed as finding these measures to be futile. Rather, our decision merely comports with the technical requirements that R.C. 2929.20(H) explicitly places on a trial court when granting judicial release to a defendant originally imprisoned for a felony of the first or second degree.

{¶ 23} For all of these reasons, we sustain appellant's first and second assignments of error. Accordingly, we reverse the judgments of the Franklin County Court of Common Pleas, and we remand this matter to that court for further proceedings consistent with this opinion.

Judgments reversed
and cause remanded.

McGRATH, P.J., and SADLER, J., concur.