OPINION
{¶ 1} Defendant-appellant, Eugene Green, appeals the decision of the Belmont County Common Pleas Court resentencing him for assault, felonious assault, robbery, attempted theft, aggravated burglary, and failing to notify of a change of address while being a sex offender. Green argues that since his crimes were committed before the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, application of the Foster decision to his resentencing violates the ex post facto clause of the United States Constitution and violates his right to due process of law.
 {¶ 2} In July 2004, Renee Snider was living on her father's property in Belmont County with her two sons, her father, and her father's girlfriend, Tammy Datkuliak.[1] Snider had previously been friends with Green, he had been to the family's residence, and the whole family knew who he was.
 {¶ 3} Snider worked overnight until the early morning hours of July 22, 2004, and Datkuliak picked her up after work and took her home. Snider went asleep in the basement, while Datkuliak took Snider's sons into a camper where Snider's father and Datkuliak slept. A couple of hours later, Datkuliak had to leave again to pick Snider's father up from his work and put Snider's two sons with Snider in the basement.
 {¶ 4} At approximately 7:00 am, Green jerked Snider awake by grabbing her ankle and told her that he was going to beat her. She asked him to leave and he walked out, but then walked back inside and began beating and kicking her. While Snider had been sleeping, Green had taken her children to the camper. When beating Snider, Green told her, "This is what you get." According to Snider, Green *Page 3 
had both a knife and a hammer in his hands during this time.
 {¶ 5} Eventually, Datkuliak returned with Snider's father. In the meantime, Green had Snider take a bath to clean herself up. He and Snider then approached her father to speak to him and Green agreed to take one of Snider's friends home. After Green left, Snider told her father about the incident and he had her call the police. Green returned and Snider's father informed him that they had called the police. Green left and was not seen at the property again that day. The police who arrived at the scene took statements and discovered the hammer and knife which Green held during the assault.
 {¶ 6} That night, Snider and her children slept inside the camper with Datkuliak. The next morning Snider and Datkuliak exited the camper and were attacked by Green. He hit Datkuliak several times with a hammer before locking her in the camper, chasing Snider, and taking Snider to the basement again. Eventually, Green brought Snider, her children, and Datkuliak to the basement where he hit Snider with the blunt side of a machete and slashed Datkuliak's face with the machete. While Datkuliak was locked in the camper, she called the police, who responded while Green had the family in the basement. After seeing the police, Green disappeared behind the house into a wooded area.
 {¶ 7} Green was on parole at the time for rape and was subject to the reporting requirements for sexually oriented offenders, including notification of any change of address seven days before the change. After these incidents, his parole officer went to his last known address, only to discover that Green had not lived there for over a week. He had not notified the Sheriff of a change of address.
 {¶ 8} Since Green could not be located, local police were told to be aware of and on the lookout for Green. On July 26, 2004, Darl Burris was doing plumbing at a church when he approached his truck and saw Green standing next to it. Green was holding a hammer and told Burris that he needed Burris's truck because he was "in *Page 4 
trouble" for "working over" two ladies. Burris gave Green the keys to his truck and later called police to report the theft.
 {¶ 9} On July 27, 2004, Green "busted in" to the home of Magdalene Lawson and demanded a firearm. Green had worked for Lawson's husband and suspected there was a firearm in the bedroom. He told Lawson that he may have to tie her and gag her while he looked for the gun. However, he eventually left Lawson's home without harming Lawson or taking anything with him. Lawson reported this incident to the police.
 {¶ 10} After Lawson's report to the police, the police knew Green was in Burris's vehicle and the general area he was in. With the assistance of aerial reconnaissance, the police located Green. Many units responded, including Deputy Stanley Gallownia, who was still in uniform while retuning home from work, but was driving his personal vehicle. Gallownia went to the location and took his keys with him when exiting his vehicle, but left the doors unlocked. As he approached Green's reported location, Green jumped out of a thicket and ran for Gallownia's truck. When Green reached the truck, he reached in toward the ignition area, but got out of the truck when he felt the keys were not there. After further pursuit, Green was apprehended and arrested.
 {¶ 11} On August 4, 2004, Green was charged with a seven count indictment containing the following charges: 1) aggravated burglary against Snider with a repeat violent offender specification based on Green's prior rape conviction; 2) felonious assault against Snider; 3) felonious assault against Datkuliak; 4) robbery against Burris; 5) attempted theft against Gallownia; 6) aggravated robbery against Lawson with a repeat violent offender specification based on Green's prior rape conviction; and, 7) kidnapping against Lawson with a repeat violent offender specification based on Green's prior rape conviction. Under a separate indictment filed on September 2, 2004, Green was also charged with failing to report his change of address in a timely fashion.
 {¶ 12} The case proceeded to a jury trial. At the conclusion of that trial, the *Page 5 
jury acquitted Green of the aggravated burglary against Snider, the felonious assault against Snider, and the kidnapping against Lawson. However, it found Green guilty of the lesser included offense of assault against Snider and all other charges, including the repeat violent offender specification attached to the aggravated burglary against Lawson.
 {¶ 13} When sentencing Green, the trial court sentenced him to non-maximum sentences on all counts except for attempted theft and failure to report the change of address. It then ordered that portions of those various sentences be served consecutively, for a total of sixteen years imprisonment.
 {¶ 14} Green appealed his conviction and sentence to this court. He argued his counsel was ineffective; the trial court did not conduct a sufficient investigation into his claims that his counsel was ineffective; that many of his convictions were not supported by sufficient evidence; and, that the trial court erred when sentencing him to maximum and consecutive sentences. This court affirmed Green's conviction, but vacated his sentence and remanded for resentencing in accordance with State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470. State v. Green, 7th Dist. No. 05 BE 36, 2006-Ohio-7074.
 {¶ 15} On January 29, 2007, the trial court resentenced Green again to a total of sixteen years imprisonment. This appeal followed.
 {¶ 16} Initially, it should be noted that plaintiff-appellee, State of Ohio, has failed to file a brief in this matter. Therefore, we may accept Green's statement of the facts and issues as correct and reverse the judgment if his brief reasonably appears to sustain such action. App.R. 18(C).
 {¶ 17} Green's sole assignment of error states:
 {¶ 18} "The trial court denied Mr. Green due process of law, by sentencing him to more than a minimum term of imprisonment, in violation of the ex post facto doctrine. Fifth and Fourteenth Amendments, Article I, Section 10, Unites States Constitution. (Journal Entry of Sentence; January 29, 2007)."
 {¶ 19} Green argues that since his crimes were committed before the Ohio *Page 6 
Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, application of the Foster decision to his January 29, 2007 sentencing violates the ex post facto clause of the United States Constitution and violates his right to due process of law. Specifically, he argues that there should have been a presumption of minimum, concurrent sentences at his resentencing.
 {¶ 20} This Court has conclusively determined in State v. Palmer, 7th Dist. No. 06-JE-20, 2007-Ohio-1572, that application of Foster does not violate the ex post facto clause or a defendant's due process of law.Palmer relied on our own precedent as well as on decisions from other Ohio appellate districts, including the Second, Third, Ninth, and Twelfth, all of which had reach similar conclusions. The reasoning is primarily two-fold. First, Ohio appellate courts are inferior in judicial authority to the Ohio Supreme Court. Therefore, they are bound by their decisions and are not in a position to declare one of their mandates as unconstitutional. Second, a criminal defendant is presumed to know that their actions are criminal if so defined by statute and the possible sentence they could face if convicted. The statutory range of punishment a criminal defendant faced before Foster is the same as they face after Foster.
 {¶ 21} Accordingly, appellant's sole assignment of error is without merit.
 {¶ 22} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
DeGenaro, P.J., concurs.
[1] The underlying facts of this case are borrowed verbatim from this Courts opinion involving Green's first, direct appeal in State v.Green, 7th Dist. No. 05 BE 36, 2006-Ohio-7074. *Page 1