OPINION
{¶ 1} Samuel Snyder appeals from the trial court's order denying his petition to vacate his convictions of rape. Snyder entered his guilty pleas on February 18, 2000. The trial court sentenced him to four consecutive six-year terms. Snyder timely *Page 2 
appealed his convictions on May 9, 2000, and we affirmed them on December 14, 2001. On October 18, 2000, Snyder filed a petition to vacate his convictions, contending he was under the influence of medication at the time he entered his guilty pleas and was incompetent to enter those pleas. On May 11, 2001, the trial court overruled Snyder's petition without a hearing and without findings. On June 11, 2001, Snyder appealed the trial court's ruling. On October 15, 2001, this court dismissed Snyder's second appeal because the trial court failed to make the requisite findings required by R.C. 2953.21 (C). The trial court proceeded to make findings, but we reversed the trial court's judgment and remanded the matter so the trial court could conduct an evidentiary hearing on Snyder's claims. On December 21, 2004, the trial court conducted the evidentiary hearing. On May 22, 2007, the trial court overruled Snyder's petition for post-conviction relief.
 {¶ 2} The trial court made extensive factual findings and conclusions of law in overruling Snyder's motion. They are as follows:
 {¶ 3} "Samuel Snyder was indicted on five counts of rape, four counts of disseminating matter harmful to juveniles, one count of pandering obscenity involving a minor, and five counts of pandering sexually oriented matter involving a minor-a total of 15 sex offenses.
 {¶ 4} "From his arrest on October 4, 1999 until conveyance to the penitentiary on April 12, 2000, Snyder was held in the Clark County Jail. According to his Nurses' Cardex Card, a single page reference that logs any medications that are to be administered to an inmate, jail personnel began administering a drug called Trazadone to Snyder on October 8, 1999 at a dosage of 50 milligrams. Sue Herzog, a nurse who *Page 3 
works at the jail, testified that Trazadone is a sleeping pill. She also related from the medical records maintained by the jail, that Dr. Yakhmi, a psychiatrist, prescribed the Trazadone for Snyder because he showed symptoms of depression and had trouble sleeping. Dr. Yakhmi increased the dosage to 100 milligrams on December 31, 2000 and to 150 milligrams on January 27, 2000.
 {¶ 5} "In addition to Trazadone, Snyder was prescribed a drug called Dyazide that Herzog described as a water pill. Herzog stated that Snyder was given the drug to treat his high blood pressure.
 {¶ 6} "Snyder also had a toothache during his pre-trial detention. The jail personnel administered ibuprofen to alleviate the pain. First, Snyder was given ibuprofen at a dosage of 200 milligrams on January 4, 2000. The dosage was increased to 600 milligrams the next day.
 {¶ 7} "In February of 2000, Snyder developed a sinus problem. For that condition, he was given Sinuprep, which contains Tylenol. According to Herzog.
 {¶ 8} "On February 18, 2000, Snyder's case was set for pre-trial conference. At that time, the parties negotiated a plea agreement in which Snyder would plead guilty to four counts of rape and the other charges would be dismissed. The parties went forward with the plea that day.
 {¶ 9} "On the record and in an open proceeding, the Court addressed Snyder personally as required under Crim. R. 11(C)(2). The colloquy included the direct question as to whether Snyder was under the influence of alcohol, drugs, or medications. Snyder answered that he was not.
 {¶ 10} "Pursuant to the plea, the Court sentenced Snyder to six years on each *Page 4 
count to be served consecutively for a total of 24 years. He was also classified as a sexually oriented offender."
 {¶ 11} " * * *
 {¶ 12} "The hearing on Snyder's petition was held on December 21, 2004. Testimony was given by Sue Herzog and Snyder himself. Herzog also brought the medical records relating to Snyder maintained by the jail. Those records were admitted into evidence.
 {¶ 13} "Snyder's principal claim for relief is his averment that, because he had ingested so much Trazadone the day before his plea was taken, he did not know what he was doing when he entered the plea. He claims that he deceived the jail personnel administering the medication by slipping the pills down his sleeve shortly before drinking the cup of water so as to give the appearance that he had swallowed the pill. He also claims that he kept the Trazadone pills from the time they were first given to him and took over 20 of them on February 17, 2000-the day before his plea.
 {¶ 14} "Herzog testified that the procedure for administering medications to inmates does not allow the inmate to have control. Rather, the nurse brings the medication to the inmate at the prescribed time, watches the inmate take their pills, and then checks their mouth. Herzog testified that she personally administered Trazadone to Snyder on several occasions in this manner.
 {¶ 15} "Based upon the hearing, evidence submitted in this matter, and the surrounding facts and circumstances, the Court does not find Snyder's petition to merit relief. At the hearing, the Court had the opportunity to observe Snyder's appearance on the stand and manner of testifying. The Court did not find Snyder's account credible *Page 5 
that he deceived jail nurses, hoarded up medications, and ingested a large quantity prior to his plea hearing. His account is refuted by Sue Herzog's testimony describing jail procedures for administering medication to inmates.
 {¶ 16} "Snyder's motion contends that he was also under the influence of the prescription drug Ambien. That contention is belied by the medical records, which show he was not administered Ambien until several days after the plea hearing.
 {¶ 17} "In addition, the Court found Snyder incredible because he related poor to no recollection in response to several questions, but purported to have very specific recollections about taking the pills. His responses also showed confusion about which hearing was in question. Some of his responses pertained to his plea hearing and others to his sentencing hearing.
 {¶ 18} "Snyder's credibility was further reduced because he twice admitted on cross-examination that his motivation for seeking to withdraw his guilty plea was that he received consecutive sentences instead of concurrent sentences. Dissatisfaction with the sentence imposed is not a proper basis to withdraw a guilty plea.
 {¶ 19} "Last, Snyder's motion is not supported by medical evidence to corroborate that even if he had ingested the purported quantity of Trazadone, it would have rendered him incapable of entering a knowing, voluntary, and intelligent plea."
 {¶ 20} In his first assignment of error, Snyder contends the trial court erred in denying his motion to withdraw his guilty pleas. Snyder argues that none of the evidence presented at the hearing refuted his claim that he was heavily medicated from prescription drugs and therefore was incompetent to enter voluntary and intelligent pleas. The State argues that nothing in Snyder's court behavior at the time he entered *Page 6 
his plea indicated he was under the influence of a large dose of a prescription drug.
 {¶ 21} Snyder was specifically asked by the court whether he was under the influence of any medication and Snyder denied that he was. (Plea hearing at 4.) Snyder stated he had discussed his case with his lawyer and had reviewed and understood a four-page document setting out the terms of the plea. (Plea at 5.) The trial court noted that it did not find Snyder's testimony that he took some twenty sleeping pills the day before he entered his plea credible. The court specifically found credible Nurse Herzog's testimony that the procedure for administering medication to inmates would not allow the inmate to hoard prescribed medications. The court further found Snyder's credibility reduced by his admission that his motivation for filing the motion was that he was upset at receiving consecutive sentences. The trial court was in the best position to evaluate Snyder's and Nurse Herzog's credibility. Snyder's admission that his motion was motivated by his anger at his sentence seriously undermined his credibility. We see no reason to disturb the trial court's ruling. The first assignment of error is Overruled.
 {¶ 22} In his second assignment, Snyder contends his trial counsel was constitutionally ineffective for allowing him to plead guilty to the charges when he knew Snyder was incompetent. The resolution of this assignment is largely driven by our resolution of the first assignment. Having found that the trial court properly denied Snyder's motion because the court found Snyder not credible, we must likewise overrule Snyder's second assignment. Snyder told the court at his plea that he was satisfied with his counsel and that he went over the plea agreement with his lawyers and wanted to accept the State's offer. (Plea at 6.) Snyder was represented by experienced counsel *Page 7 
who did not testify at the motion hearing. There is nothing in this record to support Snyder's claim that his trial counsel was ineffective. The second assignment of error is likewise Overruled.
 {¶ 23} In his third assignment, Snyder contends the trial court erred in imposing consecutive sentences in violation of State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. The State notes however thatFoster only applied to cases which were on direct appeal when Fosterwas decided. We affirmed Snyder's conviction and sentence on December 14, 2001. See State v. Snyder, Clark App. No. 00-CA-0033, 2001-Ohio-7003. Foster was decided in 2006. We agree with the State that this assignment has no merit.
 {¶ 24} The Judgment of the trial court is Affirmed.
FAIN, J., and DONOVAN, J., concur.
Copies mailed to:
Amy Smith
Samuel M. Snyder
 Hon. Richard J. O'Neill *Page 1